Carl von BERNUTH et al.

v.

**ZONING BOARD OF REVIEW OF the TOWN OF NEW SHOREHAM et al.**

No. 99–567–M.P.

Supreme Court of Rhode Island.

April 17, 2001.

Neal James McNamara, Providence, for Plaintiff.

William Landry, Donald J. Packer, Mark A. Pogue, Providence, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

LEDERBERG, Justice.

This case came before the Supreme Court on the petition for certiorari brought by Carl and Dawn von Bernuth (petitioners) to review a judgment of the Superior Court affirming variances in lot-size and setback restrictions that benefited neigh-boring landowners. The Zoning Board of Review of the Town of New Shoreham (the zoning board) granted a dimensional variance that relieved Bernadette Ryan–Kelly and William Kelly (the Kellys) and Susan Coffin (Coffin) (also the applicants) from these restrictions. The petitioners argued that the zoning board erred in deciding that the hardship suffered by the applicants was such that no reasonable alternative for a legally-permitted use of their property could be enjoyed unless the dimensional variances were granted. We agree with the petitioners.

### Facts and Procedural History

At the center of this controversy are two adjacent lots, numbered 5 and 8 in a "Residential A zone" in New Shoreham, Rhode Island.[1] Lot No. 5 is currently in a condominium form of ownership, a condition created by the Kellys in 1994 or 1995. There are two buildings on lot No. 5, unit 1, owned by the Kellys, and unit 2, purchased by Coffin in 1996. Unit 2 is apparently an "accessory structure," which is defined in the Town of New Shoreham Zoning Ordinance (the zoning ordinance) as "[a] structure which is customarily incidental and subordinate to the principle structure."[2] Lot No. 5 is bounded to the west by the Atlantic Ocean, to the east by lot No. 8, and to the south by lot No. 6, which is owned by petitioners. Coffin did not participate in either the creation of the condominium form of ownership of lot No. 5 or in the construction of unit 2. At some point

---

1. The lots are located on plat 15 of the New Shoreham Tax Assessor's Plat. According to the zoning ordinance, "The Residential A zone comprises primarily rural land mostly remote from the village center and much of which is served by narrow lanes. It is intended that new development be integrated into the existing pattern of fields, walls, ponds and wetlands." New Shoreham Zoning Ordinance, § 306 A. One single-family "Dwelling Unit" per lot is permitted on RA-zoned prop-erty. *Id.* at § 306 D. Dwelling Unit is defined as "[a] structure or portion thereof providing complete independent living facilities for one or more persons, including permanent provisions for living, sleeping, eating, cooking, and sanitation, and containing a separate means of ingress and egress. *See also,* 'Household.' " *Id.* at § 202 A.47.

2. Zoning ordinance § 202 A.4.

after she purchased unit 2, Coffin purchased lot No. 8, which is undeveloped and is bounded to the north and east by Franklin Swamp.

The zoning ordinance requires minimum lot sizes of 120,000 square feet and setbacks of fifty feet for lots zoned RA.[3] Lot No. 5, which predates the zoning ordinance, contains only 108,028.80 square feet (2.48 acres), and therefore is nonconforming with respect to lot size. Unit 2 is set back forty feet from the boundary between lot Nos. 5 and 6, and there is virtually no setback between unit 2 and the boundary between lot Nos. 5 and 8, thereby resulting in nonconforming setbacks of unit 2, although unit 1 meets all such requirements. Lot No. 8 contains 139,392 square feet (3.2 acres) and therefore is a conforming lot size.

In 1997, the Kellys and Coffin jointly submitted an administrative subdivision application to the Planning Board of the Town of New Shoreham (planning board). The applicants sought to relocate the boundary line between lot Nos. 5 and 8 to the west so that unit 2 would be wholly on lot No. 8, to construct an addition that would transform unit 2 into a dwelling unit,[4] and to dissolve the condominium form of ownership of lot No. 5, leaving the Kellys the sole owners of lot No. 5. The original plan as proposed would have complied with lot-size requirements, but that plan was rejected by the planning board, which recommended that the applicants move the lot line to coincide with an existing stone wall that lies between the units. The applicants agreed to the recommendation, and the planning board approved the application by a decision letter dated January 21, 1998, subject to certain conditions, including approval of the required variances by the zoning board.[5] Though the amended plan increased the area of lot No. 8 to 165,737.81 square feet (3.8 acres), it decreased the area of lot No. 5 to 81,758.14 square feet (1.88 acres), thereby intensifying the nonconformity of that lot. The resulting setback of unit 1 from the common boundary between lot Nos. 5 and 8 would be approximately twenty-nine feet, and that of unit 2, approximately thirty-seven feet. The applicants applied to the zoning board for a dimensional variance relieving them from the setback and lot-size restrictions of § 306 of the zoning ordinance.

The application was heard by the zoning board in February 1998. Coffin was represented by counsel and presented evidence, including the testimony of architect

---

3. Zoning ordinance § 306 C.

4. The current footprint of unit 2 is 709.72 square feet. The proposed addition would have added approximately 1,226 square feet.

5. Approval was also conditioned on any additions to unit 2 being situated to the north or east side of the present structure and that there be no more than one dwelling on lot No. 8, though the possibility of an accessory structure was apparently left open. The planning board also recognized that "as a result [of the subdivision] the lot area of proposed Lot 5 requires a reduction in excess of the 20% allowed by Section 305 of the zoning ordinance." Section 305 of the zoning ordinance provides that

"[i]n subdividing land, in order to allow boundaries to coincide with stone walls or other historical landscape features, as long as the aggregate number of lots allowed under conventional subdivision is not exceeded and as long as the average lot size of the subdivision meets the minimum lot area standard for the zone, individual lots may be modified. In Residential Zone A and Residential Zone B, the standards for minimum lot area and minimum setbacks shall be modified as follows:

A. Up to twenty percent (20%) less than the minimum lot area of the zone for land not bounded by a Town road or State highway."

David Coffin, Susan's husband, who described the area and the subdivision plan. Dawn von Bernuth, an attorney, appeared at the hearing, objected to the plan, and cross-examined Mr. Coffin. The hearing was "held open" for briefs from the parties and for the submission of any further information deemed necessary.[6]

In May 1998, the zoning board's two-page decision letter "grant[ed] the Application for a Variance from Section 306(C)" and included several "findings of fact" and certain conditions on the approval.[7] Pursuant to G.L.1956 § 45-24-69, petitioners timely appealed to the Superior Court which affirmed the relief granted by the zoning board in December 1999.[8] The petitioners then sought certiorari by this Court, and we issued the writ.

On appeal, petitioners made essentially three arguments in support of their position that the decision of the zoning board was defective: first, no legally competent evidence existed in support of the position that the applicants had no reasonable alternative for the enjoyment of the permitted use of the lots without the relief sought and that the board's decision failed to address that statutory requirement; second, the zoning board's decision did not address the deviation in lot size; and third, the Kellys did not submit any evidence in support of the joint application.

### Standard of Review

Section 45-24-69 grants the Superior Court jurisdiction to review a zoning

board's grant of an application for a variance, providing in pertinent part:

"(d) The [Superior] court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:

(1) In violation of constitutional, statutory, or ordinance provisions;

(2) In excess of the authority granted to the zoning board of review by statute or ordinance;

\* \* \*

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

"This [C]ourt does not weigh the evidence; instead we review the record to determine whether substantial evidence existed to support the Superior Court justice's decision." *OK Properties v. Zoning Board of Review of Warwick*, 601 A.2d 953, 955 (R.I.1992). "We do not reverse a Superior Court justice's decision unless it can be shown that the justice 'misapplied the law, misconceived or overlooked material evi-

---

**6.** Briefs apparently were submitted but did not appear in the record before the Superior Court.

**7.** Among the conditions was that there be only one "dwelling unit" on each lot, but the zoning board decision letter apparently left open the possibility of "future buildings" located "within the area 50 feet from the dwelling unit."

**8.** E.W. Rhame was permitted to intervene in the Superior Court action by stipulation of the parties, but did not join the petition for certiorari. In September 1998, after the zoning board decision but before the Superior Court decision, Rhame acquired land that abuts lot No. 5 to the north.

dence, or made findings that were clearly wrong.'" *Id.*

### Evidence of Hardship

The petitioners first argued that the zoning board did not have before it any legally competent evidence that the applicants had no reasonable alternative to the enjoyment of the permitted use of lot Nos. 5 and 8 absent the relief sought, a condition required by § 45–24–41(d)(2) and § 706 E.2 of the zoning ordinance. The petitioners proposed that one reasonable alternative to the requested relief would be building an entire new house on lot No. 8, rather than expanding the existing unit 2 on a reconfigured lot No. 5.

The applicants contended that "given the close proximity of existing structures, the combined area of lot No. 5 and lot No. 8, the location of the stone walls, and the proximity of swamps and wetlands, the [applicants] would have no reasonable alternative to enjoy the legally permitted use of the two lots, to wit, to accommodate two single family dwelling units, without the relief requested."

Both parties cited numerous cases of dimensional and use variances in support of their positions. All of those cases, however, were decided prior to the 1991 amendment (P.L.1991, ch. 307, § 1) to the zoning enabling legislation. The 1991 legislation established a new statutory requirement for obtaining a dimensional variance that "effectively sounded the death knell for the old *Viti* doctrine that had allowed a property owner to obtain a di-

mensional variance simply by demonstrating an adverse impact amounting to more than a mere inconvenience." *Sciacca v. Caruso,* 769 A.2d 578, 583 (R.I.2001). Therefore, the cases cited by the parties "as they relate to the burden of proof required to authorize the granting of a dimensional variance, have been superseded now by the 1991 amendment." *Id.*

■ The requirements for obtaining a dimensional variance are listed in § 45–24–41(c) and (d) and the analogous provisions of the zoning ordinance, § 706 D. and E. Most pertinent in this case is § 45–24–41(d)(2), which contains one of the requirements for obtaining a dimensional variance and which has substantially the same language as § 706 E.2 of the zoning ordinance. Section 45–24–41(d)(2) provides in relevant part:

> "The zoning board of review shall, in addition to the above standards [enumerated in subsection (c)], require that evidence is entered into the record of the proceedings showing that: * * * (2) in granting a dimensional variance, that the hardship suffered by the owner of the subject property if the dimensional variance is not granted amounts to more than a mere inconvenience, which means that there is no other reasonable alternative to enjoy a legally permitted beneficial use of one's property. The fact that a use may be more profitable or that a structure may be more valuable after the relief is granted is not grounds for relief." [9]

9. The additional statutory requirements for obtaining a zoning board of review variance are listed in G.L.1956 § 45–24–41(c), which is substantially the same as § 706 D of the zoning ordinance:

"(c) * * *

(1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or struc-

ture and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant, excepting those physical disabilities addressed in § 45–24–30(16);

(2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;

Therefore, an applicant seeking a dimensional variance has the burden before the zoning board of showing that a factual basis appears in the record to support the proposition that there is "no other reasonable alternative" that would allow the applicant to enjoy a legally permitted beneficial use of the property.

▇ In the case at bar, there is no evidence in the record that a hardship existed or that the applicants had no reasonable alternative. For example, there is no evidence that the applicants could not have moved the existing structure onto lot No. 8 or built an entirely new house on lot No. 8 without a variance. Although the applicants' proposal was one that offered advantages over other possible plans, that fact alone did not establish that no reasonable alternative existed by which they could enjoy the legally permitted beneficial use of their property. In fact, the record failed to disclose any substantial evidence to support a finding of hardship by the zoning board. Therefore, in affirming the zoning board's grant of relief, the trial justice misapplied the law and made findings that were clearly wrong. For us to hold otherwise would be to allow zoning boards and applicants to "evade the threshold showing of hardship that is required to obtain relief." *Sciacca*, 769 A.2d at 585.

### Adequacy of Written Decision

▇ Although our resolution of the preceding issue is sufficient to resolve this appeal, we address petitioners' argument that the zoning board and the Superior Court failed to make evidentiary findings concerning the requirements of § 45–24–

(3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the

41(d)(2) and § 706 E.2 of the zoning ordinance.

▇ The Legislature has mandated that "[t]he zoning board of review shall include in its decision all findings of fact * * *." Section 45–24–61. In addition, this Court has long held that "a zoning board of review is required to make findings of fact and conclusions of law in support of its decisions in order that such decisions may be susceptible of judicial review." *Cranston Print Works Co. v. City of Cranston*, 684 A.2d 689, 691 (R.I. 1996) (quoting *Thorpe v. Zoning Board of Review of North Kingstown*, 492 A.2d 1236–37 (R.I.1985)); *see Sciacca*, 769 A.2d at 585 (quoting *Irish Partnership v. Rommel*, 518 A.2d 356, 358 (R.I.1986)); *May–Day Realty Corp. v. Board of Appeals of Pawtucket*, 107 R.I. 235, 239, 267 A.2d 400, 403 (1970).

"[W]e must decide whether the board members resolved the evidentiary conflicts, made the prerequisite factual determinations, and applied the proper legal principles. Those findings must, of course, be factual rather than conclusional, and the application of the legal principles must be something more than the recital of a litany. These are minimal requirements. Unless they are satisfied, a judicial review of a board's work is impossible." *Irish Partnership*, 518 A.2d at 358–59 (quoting *May–Day Realty Corp.*, 107 R.I. at 239, 267 A.2d at 403).

"[W]hen the board fails to state findings of fact, the court will not search the record for supporting evidence or decide for itself what is proper in the circumstances." *Irish Partnership*, 518 A.2d at 359.

comprehensive plan upon which the ordinance is based; and

(4) That the relief to be granted is the least relief necessary."

Although the zoning board in this case made findings of fact regarding other statutory requirements for a dimensional variance, it made no findings of fact specifically addressing the requirements of § 45–24–41(d)(2). There was no discussion in the written decision of what the board considered to be the hardship suffered by the applicants, nor was there any discussion of reasonable alternatives or a lack thereof necessitating relief. We cannot determine what evidence that was presented to the zoning board persuaded it that the requirement of § 42–24–41(d)(2) had been met. Indeed, there is no evidence that the zoning board considered or applied the statutory requirement, given that the statute is not acknowledged in the zoning board's decision. Thus, even if the applicants did present sufficient evidence to support a finding that no other reasonable alternative existed whereby a legally permitted beneficial use of the property was possible, the zoning board's decision was conclusional and failed to apply the proper legal principles, thereby making judicial review of the board's work impossible. *Irish Partnership*, 518 A.2d at 358. Accordingly, we hold that the Superior Court erred in affirming the zoning board's decision that did not comply with statutory provisions. Section 45–24–69(d)(1).

■ The petitioners also argued that the zoning board's decision was defective because it approved the application without addressing the necessary lot-size requirement. Although the zoning board clearly was aware that lot-size relief was being requested for lot No. 5, lot-size relief is not expressly mentioned anywhere in the decision letter. This omission was also error. As is apparent from our preceding discussion, a zoning board cannot grant relief by implication; it must state expressly any relief that is being granted, in this case, a lot-size dimensional variance.

In our recent decision in *Sciacca*, we emphasized a caveat that bears repeating:

"[W]e point out that it would be difficult to sustain the board's decision in any event in view of the inadequate record kept by it and also because of the inadequacy of the statement summarizing its decision. It might be appropriate to suggest again that, because of the complicated legal questions incident to all zoning hearings, zoning boards should avail themselves of the legal service of their municipal legal departments." *Sciacca*, 769 A.2d at 585–86 (quoting *Souza v. Zoning Board of Review of Warren*, 104 R.I. 697, 699–700, 248 A.2d 325, 327 (1968)).

More specifically, we "caution zoning boards and their attorneys to make certain that zoning-board decisions on variance applications (whether use or dimensional) address the evidence in the record before the board that either meets or fails to satisfy each of the legal preconditions for granting such relief, as set forth in § 45–24–41(c) and (d). Such a specification of evidence in the decision will greatly aid the Superior Courts, and, if necessary, this Court, in undertaking any requested review of these decisions." *Sciacca*, 769 A.2d at 585.

Because these issues are dispositive in deciding the petition, we need not address the remaining issues raised by the parties.

## Conclusion

For these reasons, the petition for certiorari is granted, the judgment of the Superior Court is quashed, and the case is remanded to that court with instructions to enter judgment denying the relief granted by the zoning board.