[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This matter is before the Court on the appeal of Anthony Famiano, Jr. ("Appellant") from a decision of the Zoning Board of Review for the City of Warwick ("Board"). The Board's decision denied the Appellant's request for a dimensional variance necessary to construct a proposed single-family dwelling on a substandard lot. Jurisdiction is pursuant to G.L. (1956) § 45-24-69.
 Facts and Travel
The Appellant owns real property located on Dundas Avenue in the City of Warwick, Rhode Island, otherwise identified as Warwick Assessor's Plat 334, Lot 180 ("Property"). The Property is zoned residential A-40. The Property, located in the Mill Cove area of Conimicut Point, is currently a vacant lot which measures 45 x 90 feet.[1] The Appellant wants to construct a single-family dwelling on the lot with dimensions of 24 x 30 feet and an attached 10-foot deck.[2] Because the undersized lot is located in an A-40 residential zone, construction of the proposed single-family dwelling mandates substantial zoning relief in the form of dimensional variances from various setback requirements established in the Warwick Zoning Ordinance ("Ordinance").
Pursuant to Ordinance § 906.1 and G.L. (1956) § 45-24-41(a), the Appellant applied to the Board for the necessary dimensional relief to accommodate the proposed construction. As stated above, the 4,050 square-foot Property has a lot width of 90 feet. The Site Plan forAnthony Famiano, prepared by NRC Associates and submitted with the Appellant's application, demonstrated that the construction of the proposed 24 x 40 foot dwelling would result in a 25foot frontage to Dundas Avenue, side yard setbacks of 10.5 feet, and a rear yard of 25 feet. However, to construct a residential dwelling in an A-40 zone, the Ordinance requires that the lot measure a minimum of 40,000 total square feet with a minimum lot width of 150 feet. In addition, the Ordinance requires that any structure built on the subject lot maintain a minimum frontage of 150 feet, minimum front and corner side yard of 40 feet, and a minimum rear yard of 40 feet. See Ordinance Table 2A — Dimensional Regulations. Consequently, the Appellant's proposal requires dimensional variances from the minimum specifications listed in the Ordinance for total square footage, lot width, frontage, side, and rear yard setbacks.
In compliance with Ordinance § 906.2(B) and G.L. (1956) § 45-24-41(b), the Board conducted a public hearing on the Appellant's application for dimensional relief on December 9, 2003. At the onset of the hearing, the Board heard testimony from Mr. DePasquale, who spoke on behalf of the Warwick City Planning Department ("Department"). After reviewing the Appellant's application, DePasquale testified that the Department could not approve the requested relief without an in-depth environmental study to illustrate the short and long-term impact on water quality. The Department encouraged the Board to view undersized lot development as "a factor in contributing non-point source[3] pollution to the watershed" that compounds the well-documented water quality problems that have "plagued the city." See Transcript of Public Hearing, at p. 5 (December 9, 2003) ("Tr."). The Department stated that the threat to water quality may negatively impact neighboring property and public health, impose an unreasonable economic and environmental burden on the city, and impair public enjoyment of the city's beaches. To summarize, the Department concluded that the proposal (1) fails to present evidence that the subject Property can safely support development without adversely effecting surrounding water quality, marshes, and wetlands; (2) fails to present alternative house size designs and related analysis to demonstrate which plan most effectively minimizes habitat loss and maximizes resource protection to mitigate the impact to the surrounding natural environment; (3) fails to produce a study by a professional engineer addressing sub-watershed storm water calculations, drainage, flooding, erosion control, surface water flow, soluble pollutant loading, total suspended solid contribution, soil stabilization, and the potential for compounding water quality problems to surrounding natural ecosystems; (4) fails to demonstrate that the construction will not adversely impact public health, safety, and welfare; (5) impairs the goals and objectives of the Comprehensive Plan of the City of Warwick ("Comprehensive Plan") and the Ordinance; and (6) fails to satisfy the four-prong standard set forth in Ordinance § 906.3(A) and G.L. (1956) § 45-24-41(c). See Tr. at p. 14-15. Based on these conclusions, the Department recommended that the Board deny the Appellant's application for zoning relief.
To rebut the testimony of Mr. DePasquale, the Appellant offered licensed biologist Joseph McCue to testify as to his findings regarding the proposal's environmental impact on the surrounding neighborhood. Based on his site inspection of the Property, McCue opined that the proposal did not pose a threat to wetlands, because the nearest wetland is located 290 feet from the Property, and the nearest coastal wetland is 380 feet from the Property. Further, McCue testified that there would be minimal surface runoff that probably would not reach the distant wetlands.
To mitigate the impact on groundwater, McCue stated that the Appellant intended to (1) plant shrubs on the property to absorb nutrients before they could reach the water supply; (2) connect to the sewer line; (3) install gutters to control and direct drainage; (4) incorporate a driveway composed of crushed stone and shell driveway designed to improve drainage and control disbursement of nutrients.
Next, the Appellant offered the testimony of real estate expert Robert DeGregorio. DeGregorio conceded that he had not performed any specific market analysis of the effect of the construction on surrounding properties. Nevertheless, he stated that, in his professional experience, new construction never adversely affected market value of surrounding properties. Without offering any substantive evidence, DeGregorio concluded that the denial of the Appellant's requested relief would amount to more than a mere inconvenience, because it would deprive him of all beneficial use of the land.
After the presentation of the Appellant's case, the Board heard testimony from Thomas Wilson, the Chairman of the Conimicut Conservation Commission. First, Wilson described the unique characteristics of Conimicut Point where the Property is located. He reported that the area had very poor drainage due to the fact that one-third of the land is wetland or marsh. Additionally, he suggested that the area's characteristic sandy soil and very high water table contribute to the drainage problems. Second, Wilson testified that the area was originally platted in the 1920s for small summer bungalows with approximate dimensions of 20 x 25 feet. Referencing the Comprehensive Plan and the Ordinance, he stated that the zone was designed to protect the environmentally sensitive area from hurricane damage and to meet low density requirements. Wilson opined:
 "There is nothing unique about the dimensions of this lot. The nonconforming dimensions that the Applicant seeks relief from come from the general characteristics of the lots in the area. They come from its standing as a platted lot." Tr. p. 43.
Wilson further testified that the Appellant is a sophisticated investor who has either owned or had an ownership interest in approximately forty-three (43) different lots. Currently, the Appellant owns seven (7) different properties in Warwick, including the subject Property which he purchased for $300 at a tax sale in 1998.
To conclude his testimony, Wilson suggested that approval of the Appellant's request for dimensional relief would set a dangerous precedent that would encourage and effectively sanction development of the twenty-two (22) undersized vacant lots which remain in the Mill Cove area. He contended that such a precedent would exasperate the density of development thereby contravening the goals and objectives set forth in the Comprehensive Plan and the Ordinance and destroying the character of Mill Cove and Conimicut Point.[4] Wilson used "the Day Narragansett Bay died" to illustrate the potential damage caused by overdevelopment of undersized land. The Day Narragansett died refers to the massive fish kill that took place in Summer 2003. Scientists believe nitrogen from effluent not properly treated by sewers caused the massive fish kill.
At the conclusion of the hearing, the Board heard testimony from abutting property owners which echoed the concerns raised by Wilson and the Planning Department.
After consideration of the testimony presented at the public hearing, the documentation provided in support of the application, and its personal knowledge and expertise of the Property and surrounding neighborhood, the Board voted 3-2 to approve the application. However, pursuant to Ordinance § 903.3(C) and G.L. (1956) § 45-24-57(2)(iii): "the concurring vote of four (4) of the five (5) members of the zoning board of review sitting at a hearing are required to decide in favor of an applicant on any matter within the discretion of the board upon which it is required to pass under the ordinance, including variances andspecial-use permits." (Emphasis added). As a result, the Board was compelled to deny the application, despite the fact that the votes to approve outnumbered the votes to deny. On February 23, 2004, the Board issued a pithy written decision denying the Appellant's request for a dimensional variance to construct the proposed single-family dwelling on the Property.
Pursuant to Ordinance § 908 and G.L. (1956) § 45-24-69, the Appellant timely filed the instant appeal in Kent County Superior Court on March 8, 2004. After receiving the briefs submitted by both parties, the Court is now prepared to render a decision.
 STANDARD OF REVIEW
Section 45-24-69 confers jurisdiction on the Superior Court to review the decision of a zoning board. Section45-24-69(d) provides in relevant part:
 "The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
"[T]he Superior Court reviews the decisions of a plan commission or board of review under the "traditional judicial review" standard applicable to administrative agency actions." Restivo v. Lynch, 707 A.2d 663, 665
(R.I. 1998). The Superior Court "lacks [the] authority to weigh the evidence, to pass upon the credibility of witnesses, or to substitute his or her findings of fact for those made at the administrative level." Id.
at 665-66 (quoting Lett v. Caromile, 510 A.2d 958, 960 (R.I. 1986)).
"The trial justice may not substitute [his or her] judgment for that of the zoning board if [he or she] can conscientiously find that the board's decision was supported by substantial evidence in the whole record." MillRealty Assocs. v. Crowe, 841 A.2d 668, 672 (R.I. 2004) (quoting Apostolouv. Genovesi, 120 R.I. 501, 509, 388 A.2d 821, 824-25 (1978)). "Substantial evidence means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance." Lischio v. ZoningBoard of Review of the Town of North Kingstown, 818 A.2d 685, 690, n. 5 (R.I. 2003) (quoting Caswell v. George Sherman Sand Gravel Co.,424 A.2d 646, 647 (R.I. 1981)).
On appeal, the Appellant contends that the Board's decision was not supported by competent evidence and was clearly erroneous in view of the reliable, probative, and substantial evidence on the record. Further, the Appellant argues that the denial of the requested variance resulted in an adverse impact that constituted more than a mere inconvenience, because he is left without any reasonable legal use of his land. The Board responds that it properly denied the Appellant's application because he failed to satisfy the four-prong standard for dimensional relief.
The Court has carefully reviewed the arguments raised by both parties and the entire record of the proceedings before the Board. For the foregoing reasons, the Court finds that the Board's decision fails to state with any specificity the basis for its written denial of the Appellant's request for a dimensional variance. Consequently, the Superior Court lacks the necessary information to reasonably evaluate the denial.
 Dimensional Relief
Section 45-24-31(61)(ii) defines a dimensional variance as:
 "Permission to depart from the dimensional requirements of a zoning ordinance, where the applicant for the requested relief has shown, by evidence upon the record, that there is no other reasonable alternative way to enjoy a legally permitted beneficial use of the subject property unless granted the requested relief from the dimensional regulations."
In order to obtain a dimensional variance, Ordinance § 906.3 (A) sets forth the four-prong standard which an applicant must satisfy to obtain relief:
 (1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not the general characteristics of the surrounding area, and is not due to the physical or economic disability of the applicant;
 (2) That said hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) That the granting of the requested variance will not alter the general characteristics of the surrounding area or impair the intent or purpose of this zoning ordinance or the comprehensive plan of the city;
 (4) That the relief to be granted is the least relief necessary.[5]
Before the Court can determine whether the denial of the Appellant's petition for dimensional relief is supported by substantial evidence on the record, the Court must verify that the written decision issued by the Board meets the minimum requirements set forth in Ordinance § 903.5(A) and G.L. (1956) § 45-24-61(a) to facilitate effective appellate review.
 The Decision of the Board
Ordinance § 903.5(A) and G.L. (1956) § 45-24-61(a) require the Board to issue a written decision either affirming or denying a request for zoning relief. The decision must include "all findings of fact and conditions, the vote of each participating member, and the absence of a member or his or her failure to vote." Id. "When the board fails to state findings of fact, the court will not search the record for supporting evidence or decide for itself what is proper [under] the circumstances." von Bernuthv. Zoning Board of Review, 770 A.2d 396, 401 (R.I. 2001) (quoting IrishPartnership v. Rommel, 518 A.2d 356, 359 (R.I. 1986)).
The Rhode Island Supreme Court has "caution[ed] zoning boards and their attorneys to make certain that zoning-board [sic] decisions on variance applications (whether use or dimensional) address the evidence in the record before the board that either meets or fails to satisfy each of the legal preconditions for granting such relief, as set forth in § 45-24-41(c) and (d)." von Bernuth, 770 A.2d at 402. In von Bernuth, the Supreme Court reversed the affirmance of a zoning board decision approving a request for dimensional relief. The Supreme Court found that the failure of the Board to provide substantive findings to demonstrate compliance with not only the four-prong standard for zoning relief but also the requisite degree of demonstrable hardship constituted reversible error.
After review of the written decision issued by the Board on the Appellant's request for dimensional relief, the Court is troubled by the conclusory, hollow findings of fact that provide little to no aid in discerning the basis for the denial. Despite the plethora of opinion and expert testimony which comprises the seventy-two (72) page transcript of the proceedings below, the Board made only five findings of fact. The first finding merely identifies the Property by its plat and lot number, its total square footage, and the type of zoning applicable. The second finding reiterates that the Appellant has owned the Property for five years. The third finding states that it is the Appellant's proclaimed intention to use the Property as a summer home when he retires. The fourth finding restates the dimensions of the proposed single-family dwelling. Finally, the fifth finding notes that abutting property owners appeared at the public hearing to object; however, it makes no mention of the substance of those objections. With the exception of the third finding, the other four merely recite undisputed facts. As such, they are useless in terms of actual evidentiary findings, because they fail to provide this Court with the necessary means to review the Board's decision.
When the Board's decision is conclusional and fails to apply the proper legal principles, "judicial review of the board's work [is] impossible." Id. In a case where the applicant utterly fails to present any substantial evidence which bears directly on the applicable standard for zoning relief, the Board must deny the application and does not need to provide independent justification for that denial. However, given the fact that both the applicant and the objectors provided compelling testimony on the relevant legal and factual issues, the instant case presents the opposite situation.
The voluminous transcript reveals that the Appellant presented extensive testimony from both an environmental expert and a real estate expert. If accepted by the Board as credible, the testimony given by the experts, as well as their respective reports offered into the record, could satisfy the first, second, and third prongs of the four-prong standard. Conversely, the Board heard substantive and informative testimony opposing the proposal from the Chairman of the Conimicut Conservation Commission which could also have provided a satisfactory basis for denial. Although the Court recognizes that the Board is well within its discretion to reject the testimony of various experts, the Board must note that rejection and the reasons therefor in its written decision. In the instant case, the Board failed to state which expert it found credible and which testimony it ultimately rejected. In its appellate capacity, the Court lacks the authority to weigh the evidence or pass upon the credibility of witnesses absent a glaring abuse of discretion. See Restive, 707 A.2d at 665. Consequently, this Court is incapable of deciding whether competent evidence exists to support the Board's decision.
More importantly, three Board members voted to approve and only two voted to deny the Appellant's petition for dimensional relief. Consequently, the failure to obtain the fourth concurring vote as required by Ordinance § 903.3 (C) and G.L. (1956) § 45-24-57(2)(iii) effected a technical denial of the petition. This type of lopsided denial further complicates review of the decision, because it suggests that the Board members who voted to approve did, in fact, find the testimony presented sufficient to satisfy the four-prong standard. Under these circumstances, the Court finds that it is even more incumbent on the Board to weigh the evidence presented, both documentary and testimonial, and to make specific findings with respect to that evidence in its written decision. When a lengthy transcript includes persuasive and informed opinions from competing experts, the Board must engage in an extensive review and examination of the evidence presented and provide a reasoned basis for its subsequent denial. An appellate court will not be satisfied by a written decision which merely pays lip service to the applicable standard of review without providing any meaningful analysis.
Therefore, the Court finds that the written decision issued by the Board is in violation of Ordinance § 903.5(A) and G.L. (1956) §45-24-61(a), because it fails to set forth in sufficient detail the findings of fact that the Board relied on to deny the Appellant's request for a dimensional variance. Because this issue is dispositive, the Court cannot reach the substantive merits of the instant appeal.
 Conclusion
For the reasons stated above, the Court reserves judgment on the merits of the instant appeal and remands the case back to the Zoning Board to issue a decision that complies with the mandate of this decision. Counsel shall submit an appropriate order.
[1] Conimicut Point is a peninsula made from the sand carried by the currents of Narragansett Bay.
[2] The addition of the ten-foot deck increases the dimensions of the proposal to 24 x 40 feet.
[3] Point source pollution is that which can be attributed to a specific source such as a pipe, a ditch, or sewage overflow. Non-point source pollution is that which is difficult to pinpoint, such as stormwater runoff, landfill seepage, or erosions and sedimentation from construction activities. See Comprehensive Plan, Land Use Element, p. 61.
[4] Wilson noted that based on the total area of the land which measures 794,846 square feet, strict compliance with the A-40 zoning requirements would allow for construction of approximately 20 houses. (794,846 divided by the required minimum lot space of 40,000). Currently, fifty-six (56) houses have been constructed with three more under construction.
[5] The standard set forth in § 906.3(A) of the Ordinance is substantial similar to G.L. (1956) § 45-24-41(c) which reads: "(c) In granting a variance, the zoning board of review requires that evidence to the satisfaction of the following standards is entered into the record of the proceedings:
 (1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant, excepting those physical disabilities addressed in § 45-24-30(16);
 (2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and
 (4) That the relief to be granted is the least relief necessary."