[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court is an appeal from a decision of the Zoning Board of Review of the Town of Bristol (Board), permitting construction of a modular home on an undersized lot. Appellants Mark and Holly D'Agostino (Appellants or D'Agostinos) own property abutting the land in question. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 FACTS AND TRAVEL
The subject lots are identified as Assessor's Plat 152, Lots 255, 256, and 257 located on Sefton Drive in Bristol. The D'Agostinos' lot, which they purchased in 1991, abuts Lot 257. The district was formerly zoned "SR," which required a minimum lot area of 20,000 square feet and a minimum lot width of 120 feet to build. Currently the district is zoned R-10SW, which requires a minimum 10,000 square foot lot for a single-family dwelling and 20,000 square feet for a two-family dwelling. In 1970, E F Realty Co., Inc. (E F Realty) held title to the three contiguous lots. Each individual lot maintained fifty (50) feet of frontage and was 100 feet deep. Each lot, therefore, contained 5,000 square feet; thus, the combination of the three lots totals 15,000 square feet.
William Sequino, father of Defendant David Sequino (Sequino), was and is the principal of E F Realty, a Rhode Island corporation. In September 1987, David Sequino applied for a building permit to construct a single-family residence on Lots 255 and 256. On or about November 17, 1987, the deed transfers from E F Realty to Sequino for Lots 255 and 256 were recorded. E F Realty retained the deed to Lot 257. On December 9, 1987, the Bristol Town Council passed Ordinance 1987-18, which became effective ten (10) days later, repealing a portion of the 1961 zoning ordinance.
On February 25, 1988, Sequino transferred ownership of Lots 255 and 256, which then contained a single-family residence, to a third party. Years later, on January 12, 2001, E F Realty and Kaisen Company, LLC (Kaisen), of which Sequino is the principal, applied for a building permit for Lot 257. E F Realty was listed as "owner" and Kaisen as "contractor" on the building permit, which sought to construct a modular home. Then, on April 30, 2001, E F Realty transferred its interest in Lot 257 to Kaisen.
Upon seeing Lot 257 being cleared for construction, Appellants contacted counsel, who promptly sent a letter to the Bristol Building Official to complain about the new construction. On June 1, 2001, the Building Official issued a Cease and Desist Order to E F Realty, on the basis of a "change in ownership" and an "error on the History of Ownership." The Cease and Desist Order letter declared the building permit "null and void." Twelve days later, on June 13, 2001, the Bristol Town Solicitor, Michael Ursillo (Ursillo), sent a letter to Sequino's attorney explaining more of the reasoning behind the Cease and Desist Order. In that letter, Ursillo stated that "[t]he reason for the decision is that an illegal subdivision was created in 1987 when E F Realty Co., Inc. sold two of the lots on Sefton Drive to Sequino leaving the third lot as an unbuildable lot." (Ursillo Ltr. of June 13, 2001 at 1.) Almost one month later, on July 10, 2001, the Bristol Building Official, Richard Pimenta, sent a letter to Sequino care of Kaisen advising him that the Cease and Desist Order was thereby lifted and that construction could continue "provided that [Sequino] deed [the lot] back into E F Realty which presently holds the building permit." (Pimenta Ltr. of July 10, 2001.)
On July 20, 2001, Appellants filed a complaint in the Superior Court seeking injunctive and declaratory relief. A temporary restraining order was issued, and later renewed at a hearing on July 26, 2001. A properly noticed appeal with the Board was filed on July 27, 2001. On August 7, 2001, the Bristol Zoning Enforcement Officer, Gerhard Oswald (Oswald), sent a stop work order to Sequino ordering Sequino to "CEASE ALL WORK until [the] matter [was] resolved by the Board or the courts." (Oswald Ltr. of August 7, 2001.) The very next day, August 8, 2001, Oswald sent another letter to Sequino ordering him to fill the ten to twelve foot deep hole on the property because it created a hazardous condition. (Oswald Ltr. of August 8, 2001.) The hole was promptly refilled.
On September 11, 2001, the Board heard the appeal and unanimously denied it. At the hearing, Mark D'Agostino testified that he was repeatedly told that the lot in question was unbuildable, and he even once had considered trying to purchase the vacant lot on which to build a garage. Some neighbors also testified at the hearing. One stated that in his opinion the proposed home would not conform to the neighborhood and the lot would be better used as a park. The neighbor also stated that he had been told that the lot in question was unbuildable. Another neighbor testified about problems with rainwater pooling, high groundwater levels, and the increased risk of flooding to his property if the proposed house was built. Sequino also testified as to the chronology of events that occurred and the fact that he had an equitable interest in the property at the time he applied for a building permit on Lot 257.
Appellants timely filed the instant appeal on October 10, 2001, and shortly thereafter sought a stay, which this Court issued pending the submission of briefs. A decision is herein rendered on the instant appeal.
 STANDARD OF REVIEW
The Superior Court's review of a zoning board decision is governed by § 45-24-69(d), which provides that:
 "The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of a zoning board, a justice of the Superior Court may "not substitute [his or her] judgment for that of the zoning board if [he or she] conscientiously find[s] that the board's decision was supported by substantial evidence."Apostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825
(1978). "Substantial evidence . . . means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance." Lischio v. Zoning Bd. of Review of NorthKingstown, 818 A.2d 685, 690 n. 5 (R.I. 2003) (quoting Caswellv. George Sherman Sand Gravel Co., Inc., 424 A.2d 646, 647
(R.I. 1981)). Thus, the reviewing court must examine the record to determine whether competent evidence exists to support the Board's decision. Compare New England Naturist Assoc., Inc. v.George, 648 A.2d 370, 371 (R.I. 1994) (quashing Superior Court judgment based on erroneous ruling), with von Bernuth v.Zoning Bd. of Review of New Shoreham, 770 A.2d 396, 401-02 (R.I. 2001) (denying relief granted by zoning board based on lack of competent evidence and remanding to Superior Court). Additionally, "the trial justice [has] the authority to remand a case to the zoning board of review for further proceedings" but such action "should be based upon a genuine defect in proceedings in the first instance. . . ." Roger Williams Coll. v. Gallison,572 A.2d 61, 62-63 (R.I. 1990).
 BOARD'S DECISION
Section 45-24-61 of the General Laws provides that "the zoning board of review shall include in its decision all findings of fact. . . ." Our Supreme Court recently affirmed "that `a municipal board, when acting in a quasi-judicial capacity, must set forth in its decision findings of fact and reasons for the actions taken.'" Kaveny v. Town of Cumberland Zoning Bd. ofReview, 875 A.2d 1, 14 (R.I. 2005) (quoting Sciacca v. Caruso,769 A.2d 578, 585 (R.I. 2001) and Irish P'ship v. Rommel,518 A.2d 356, 358 (R.I. 1986)). "Such findings are necessary so that the zoning board decisions `may be susceptible of judicial review.'" Id. (quoting von Bernuth v. Zoning Bd. of Review ofTown of New Shoreham, 770 A.2d 396, 401 (R.I. 2001)). "When the [zoning] board fails to state findings of fact, the court will not search the record for supporting evidence or decide for itself what is proper in the circumstances." von Bernuth,770 A.2d at 401 (citing Irish P'ship, 518 A.2d. at 359). "Our standard of review requires that the board at least articulate some findings to support its conclusions." Kaveny,875 A.2d at 16 n. 6. Additionally, our Supreme Court has "caution[ed] zoning boards and their attorneys to make certain that zoning-board decisions . . . address the evidence in the record before the board that either meets or fails to satisfy each of the legal preconditions for granting such relief. . . ." von Bernuth,770 A.2d at 402.
In the case at bar, the Board's decision consists of a two-page standardized form that is filled in with the specific relevant information to distinguish the property and decision. At the end of the first page, the last paragraph ends with ". . . the Board makes the following findings of fact:" and then below that in a large blank space says "(see attached minutes)." The Board's written decision does not contain any findings of fact or conclusions of law, but merely references the minutes of the Board's hearing in place of the findings of fact. "[E]ven though there be a stenographic record or otherwise substantial report of the testimony, [our Supreme Court] do[es] not intend to speculate as to the grounds on which such a [zoning] board base[d] its decision." Berg v. Zoning Bd. of Review of City of Warwick,64 R.I. 290, 293, 12 A.2d 225, 226 (1940) (remanding for new hearing where "board saw fit not to set forth the ground or grounds for its decision"). This Court will not search the record for the Board's findings of fact or reasoning behind its decision. vonBernuth, 770 A.2d at 401 (citing Irish P'ship, 518 A.2d. at 359).
Nothing in the Board's decision informs this Court of the grounds upon which the Board based its decision. Del Toro. v.Zoning Bd. of Review of Bristol, 82 R.I. 317, 321, 107 A.2d 460,462 (1954). This Court cannot sustain the Board's decision "because of the inadequacy of the statement summarizing its decision." Sciacca, 769 A.2d at 585 (quoting Souza v. ZoningBd. of Review of Warren, 104 R.I. 697, 699-700, 248 A.2d 325,327 (1968)). "In view of the lack of any findings to support the board's [decision] . . . the board's decision [is] fatally flawed." Kaveny, 875 A.2d at 17.
Since the Board did not clearly set forth its findings of fact in its original decision, this case must be remanded. "On remand, the board should take care that its findings of fact are clearlyset forth in its decision, referring to the evidence presented, and that its conclusions of law are properly supported by the findings of fact." Id. (Emphasis added.)
 CONCLUSION
For the reasons stated above, this Court finds that the decision of the Board was insufficient to allow for full and proper judicial review because it lacked any actual written findings of fact and conclusions of law. Merely referencing the minutes of the hearing did not inform this Court of the facts and conclusions upon which the Board decided the matter. Accordingly, this Court hereby remands this matter to the Board for proper written decision. This Court shall retain jurisdiction.
Counsel shall submit an appropriate order in accordance with this opinion.