July 18, 2025

**Supreme Court**

No. 2022-327-M.P.
(WC 21-195)

Watch Hill Fire District      :

v.      :

Westerly Zoning Board of Review et al.   :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Watch Hill Fire District            :

v.                          :

Westerly Zoning Board of Review et al.  :

Present: Suttell, C.J., Goldberg, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.** This Court issued a writ of certiorari to review a Superior Court judgment affirming a decision by the Westerly Zoning Board of Review. The zoning board granted a dimensional variance to expand a nonconforming structure in favor of the respondent, Zoey Watch Hill, LLC, for its property located at 14 Larkin Road in Westerly, Rhode Island. Before this Court, the petitioner, Watch Hill Fire District (WHFD), presents one issue for review: "Whether the Court should reverse the Superior Court's Decision because Zoey failed to meet the Zoning Statute's requirement to establish that they have 'no other reasonable alternative way to enjoy a legally permitted beneficial use of the subject property.'" For the reasons set forth herein, we affirm the judgment of the Superior Court.

- 1 -

# I

## Facts and Travel[1]

Zoey Watch Hill, LLC (Zoey), submitted an application for a dimensional variance to the Westerly Zoning Board of Review (the board) on October 20, 2020, for its property located at 14 Larkin Road, Westerly, Rhode Island (the property). The property is a preexisting nonconforming lot of 3,049 square feet that is "more or less a figure seven shape * * *." It is located in a "Low-Density Residential 43" zoning district, which requires a minimum lot size of one acre, or approximately 43,560 square feet, for a single-family residence. The nonconforming house on the lot was built in 1938 and consists of 475 square feet of living space on the first floor, a 56-square-foot rear deck, and a two-car garage on the ground floor.

The proposed project plans to lift the house onto helical piles to allow for two levels of living space above the ground floor. The new house will have 1,128 square feet, with a two-car garage on the ground floor. The first floor would have two

---

[1] At the outset, we note that, although new zoning statutes have gone into effect since the time Zoey filed its application for a dimensional variance, "[f]or this Court to interpret a statute as retroactive, the General Assembly must make a clear expression of retroactive application." *East Bay Community Development Corporation v. Zoning Board of Review of Town of Barrington*, 901 A.2d 1136, 1144 (R.I. 2006). Our review of the relevant amendments to the Zoning Enabling Act reveals that they were specifically made effective on January 1, 2024 (P.L. 2023, ch. 304, § 2); therefore, we apply "the law in effect at the time when the applicant[] submitted its application for a permit to the zoning board." *Id.*

Accordingly, we utilize the public laws in citing to the relevant statutes throughout this opinion.

bedrooms and two bathrooms, and the second floor would consist of a living room, a kitchen, and a bathroom. An additional rear deck on the first floor was proposed but was later reduced in size; the new deck would be smaller than the other rear deck on the second floor. A roof deck would be built to conceal heating and cooling appliances and the cesspool on the property would be replaced with a denitrification septic system.

Zoey's application sought dimensional variances for all setbacks. Zoey requested dimensional variances of 20.6 feet for the front yard setback, 28.6 feet for the right-side yard setback, 27.7 feet for the left-side yard setback, and 21.1 feet for the rear yard setback (at some point during the application process, this was decreased to 14.07 feet). The board heard testimony and public comment regarding the application on December 3, 2020, and March 25, 2021. Zoey's architect, land surveyor, and engineer testified in support of the application, as did its sole member, Michael Schwartz. Several members of the public, including a representative for WHFD, spoke in opposition to Zoey's proposal. WHFD owns property at 151 Bay Street, Westerly, and operates thereon the Flying Horse Carousel and the Merry-Go-Round Beach, which abuts Zoey's property.

At the close of the March 25, 2021 hearing, the board voted 4 to 1 to approve Zoey's application and additionally voted to permit staff to prepare a written decision; that decision was approved at a meeting on April 7, 2021. The board

approved the dimensional variances and vertical expansion of the renovated house. The board decided that the hardship faced by Zoey was due to the unique characteristics of its lot, and it noted that the shape of the lot makes it impossible to build anything that conforms with setbacks. The board further found that the house on the property created a unique hardship, indicating that the house had only 577 square feet—below the United States Department of Housing and Urban Development (HUD) standard of 950 square feet for a habitable residence—and only 475 square feet of living space. The board concluded that the only reasonable option was to expand vertically, and it found that Zoey did not create the hardship and was not motivated primarily by financial gain in seeking dimensional variances.

The board also found that the property would not alter the general character of the surrounding area. It explained that the project entailed renovation of the house to maintain a single-family residence as permitted under the zoning ordinance and that the proposed house fits in stylistically with the surrounding area and was "not * * * so large as to be out of place." The board further noted that the proposal meets Federal Emergency Management Agency and Department of Environmental Management requirements and eliminates substandard and unsafe housing currently on the lot.

The board further explained that the proposal was justified as the least relief necessary, finding that the proposal to add a second floor was necessary to increase

the square footage to just above the HUD standard for a residence. Moreover, the board determined that the rooms proposed are minimal in size and the new house would keep the existing footprint. It stated that the height of the proposed house is within the zoning limits and it "is, if anything, small for the surrounding area * * *."

The board additionally determined that the hardship experienced by Zoey, if its application were not granted, would amount to more than a mere inconvenience. The board found that the current house was "not functional as a home and requires significant maintenance and upgrades." It noted that the septic system would take up "a large portion of the yard" and therefore the primary place for Zoey to enjoy its property was in the house itself. The board found that denying Zoey's request for dimensional variances would effectively prohibit Zoey from reasonably using its property, and it stated that there was no reasonable alternative. The board disagreed with WHFD's contention that the project was in essence a demolition, stating that the project consisted of lifting the structure and making renovations, utilizing the existing framing, roof trusses, and sheathing.

On April 27, 2021, WHFD filed a zoning appeal in the Superior Court.[2] The parties briefed their arguments, and a justice of the Superior Court issued a written

[2] MacLear Family Revocable Trust, Richard H. Sayre, and Elisabeth N. Sayre also filed a zoning appeal in the Superior Court from the board's decision (WC 21-199). Later, their zoning appeal was consolidated with WHFD's zoning appeal in the Superior Court. However, MacLear Family Revocable Trust, Richard H. Sayre, and

- 5 -

decision, affirming the decision of the board. The trial justice began her analysis by outlining the requirements for a dimensional variance under the Zoning Enabling Act[3] and the Westerly Zoning Ordinance, which she noted contains "substantially similar language." She then laid out WHFD's arguments: (1) the board's decision

---

Elisabeth N. Sayre did not petition this Court for a writ of certiorari and are not parties in the instant certiorari petition before this Court.

[3] General Laws 1956 § 45-24-41(d), as amended by P.L. 2016, ch. 527, § 4 provided:

> "(d) In granting a variance, the zoning board of review, or, where unified development review is enabled pursuant to § 45-24-46.4, the planning board or commission, shall require that evidence to the satisfaction of the following standards is entered into the record of the proceedings:
>
> > "(1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant, excepting those physical disabilities addressed in § 45-24-30(a)(16);
> >
> > "(2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
> >
> > "(3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and
> >
> > "(4) That the relief to be granted is the least relief necessary."

"was clearly erroneous in the absence of substantial evidence in the record satisfying three of the five statutory requirements"; (2) the board "applied an improper legal standard for dimensional variances in light of [this Court]'s recent decision in *New Castle Realty Co*[*mpany*] *v. Dreczko*, 248 A.3d 638 (R.I. 2021)"; and (3) Zoey's proposal is a "demolition of the structure, not a renovation" in violation of the Westerly Zoning Ordinance.

Addressing WHFD's first argument, the trial justice stated that, "[c]ontrary to [WHFD's] viewpoint, ownership of a grandfathered nonconforming lot may constitute substantial evidence of hardship." She indicated that the lot had "challenging characteristics" and, as to the house itself, the HUD recommendation for a minimally habitable single-family residence was objective evidence that Zoey's living space in the current house was inadequate. She therefore agreed with the board that the shape of Zoey's lot and its small size constituted a hardship.

The trial justice next addressed whether the hardship suffered by Zoey "amount[ed] to more than a mere inconvenience." (Quoting § 45-24-41(e)(2), as amended by P.L. 2016, ch. 527, § 4.) In so doing, the trial justice explained that she disagreed with WHFD's contention that *New Castle* overruled *Lischio v. Zoning Board of Review of Town of North Kingstown*, 818 A.2d 685 (R.I. 2003), stating that such an interpretation is "unreasonable." She indicated that

> "[t]he *New Castle* Court relied upon the 'no reasonable alternative' language to uphold the trial court's

- 7 -

determination that an applicant's 'unwillingness to consider suggestions'—i.e. alternatives—solely because the alternative proposal would be less valuable meant that the record supported the zoning board's determination that the applicant had 'failed to establish that the requested relief was the least relief necessary.' * * * Although the *New Castle* Court stated the § 45-24-3l(66)(ii)[, as amended by P.L. 2019, ch. 267, § 1] definitional language in full, the Court's discussion of a 'reasonable alternative' did not otherwise rely on the second half of the definitional clause pertaining to whether the applicant could enjoy a 'legally permitted beneficial use of the subject property.' * * * As a result, [WHFD] read[s] too much into the *New Castle* Court's invocation of § 45-24-31(66)(ii)[, as amended by P.L. 2019, ch. 267, § 1]." (Brackets omitted.)

She therefore determined that the board applied the correct standard—more than a mere inconvenience—in finding that Zoey would not be able to enjoy a reasonable use of its property without approval of the dimensional variance.

Next, the trial justice examined whether Zoey demonstrated that its proposal was the least relief necessary pursuant to § 45-24-41(d)(4), as amended by P.L. 2016, ch. 527, § 4. She determined that Zoey had considered alternatives to its proposal, and there were no reasonable alternatives to Zoey's proposal.

Ultimately, the trial justice found that it was not reasonable for Zoey to use the current house on the lot in its present condition. She highlighted that the evidence indicated that the house needed new windows, shingles, trim, and changes to the entrances and stairs to comply with the building code. She further noted that the kitchen and bathroom had not been updated since 1938 and that the evidence

indicated that the exterior of the house was damaged to the extent that birds were nesting in the house. She determined that the board did not act arbitrarily in deciding that retaining the structure would not afford Zoey necessary relief.

The trial justice also determined that simply renovating the house without adding square footage and elevating it was not reasonable. She found that Zoey's proposal improved the house's flood resiliency and also more closely met HUD's habitability standards. In addition, she indicated that it was not "arbitrary or clearly erroneous for the Zoning Board to determine that an alternative proposal that necessitated substantial investment and decreased overall usable space without affording [Zoey] any other relief would not permit 'full enjoyment' of the [p]roperty." She further observed that the height of the proposed house complied with the zoning ordinance.

The trial justice also found substantial evidence establishing that Zoey's motive for its application was not financial gain. She stated that the evidence indicated that Schwartz, Zoey's principal, used the house as a vacation home and did not intend to rent it or flip it and, further, that the dimensions of the proposed house were not inconsistent with the surrounding area. She decided that the board did not act in an arbitrary, erroneous, or capricious manner in deciding that the height of the house was not excessive for the area. In addition, the trial justice found that Zoey's

proposal would not result in a demolition of the current house because "it did not tear down or raze the entire structure."

She therefore affirmed the board's decision; final judgment entered on October 31, 2021. On November 29, 2022, WHFD filed a petition for a writ of certiorari, which was granted on September 28, 2023.

## II

### Standard of Review

"On a petition for certiorari from a Superior Court judgment that has entered after an appeal from a municipal zoning board's decision, we confine our review to a determination of whether the trial justice acted within his or her authority as set forth in G.L. 1956 § 45-24-69." *Freepoint Solar LLC v. Richmond Zoning Board of Review*, 274 A.3d 1, 5 (R.I. 2022) (brackets omitted) (quoting *New Castle Realty Company v. Dreczko*, 248 A.3d 638, 642 (R.I. 2021)). "Section 45-24-69(d), in turn, provides that the Superior Court 'shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact' but may 'reverse or modify the decision if substantial rights of the appellant have been prejudiced' by a decision that, among other things, is 'affected by error of law' or is 'clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record.'" *Id.* at 6 (brackets and deletion omitted) (quoting § 45-24-69(d)(4), (5)).

"We do not reverse a Superior Court justice's decision unless it can be shown that the justice misapplied the law, misconceived or overlooked material evidence, or made findings that were clearly wrong." *Freepoint Solar LLC*, 274 A.3d at 6 (quoting *New Castle*, 248 A.3d at 643). "A trial justice's findings on questions of law, however, are reviewed *de novo*." *Mallozzi v. Warwick Wings, LLC*, 330 A.3d 557, 564 (R.I. 2025) (quoting *Estrella v. Janney Montgomery Scott LLC*, 296 A.3d 97, 106 (R.I. 2023)).

**III**

**Discussion**

Before this Court, WHFD takes the position that the board and the Superior Court erred in applying the "more than a mere inconvenience" hardship standard found in § 45-24-41(e)(2), as amended by P.L. 2016, ch. 527, § 4 (the variance section), rather than the "no other reasonable alternative" hardship standard found in § 45-24-31(66)(ii), as amended by P.L. 2019, ch. 267, § 1 (the definition section). Specifically, WHFD argues that "[r]elief is warranted in this case because the Zoning Board and the Superior Court disregarded [the definition section] * * * and failed to apply *New Castle* * * *, which require an applicant for a dimensional variance to demonstrate that they have no other reasonable alternative to enjoy a legally permitted beneficial use."

In response, the board submits that the Court need not decide which standard controls because the board "applied the stricter 'no reasonable alternative' hardship standard in considering Zoey's request for a dimensional variance" and the law has recently been amended to clarify the standard. Zoey, however, argues that the standard set forth in the variance section is the controlling statute for determining a dimensional variance; the definition section, which contains the language at issue, is merely a definitional statute. Although Zoey argues that those two sections do not create an ambiguity, it submits that, if the Court determines there is an ambiguity, the variance section should control.

At the heart of the debate over the applicable standard for granting a dimensional variance is our opinion in *New Castle*. There, the plaintiff had applied to the Town of Charlestown Zoning Board of Review "for a special-use permit and a dimensional variance to build a house and install a septic system on a preexisting nonconforming lot * * *." *New Castle*, 248 A.3d at 640. Specifically at issue is our reference to the definition section, which indicates that "an applicant seeking a dimensional variance has the burden before the zoning board of showing that a factual basis appears in the record to support the proposition that there is '*no other reasonable alternative*' that would allow the applicant to enjoy a legally permitted beneficial use of the property." *Id.* at 647 (emphasis added) (quoting *Bernuth v. Zoning Board of Review of Town of New Shoreham*, 770 A.2d 396, 401 (R.I. 2001)).

- 12 -

The ultimate issue in that case, however, with respect to the request for a dimensional variance, was whether the trial justice's ruling was supported by substantial evidence in determining that "New Castle's requested relief d[id] not reflect the least relief necessary * * *." *Id.* at 648. Furthermore, because the parties there did not challenge the standard for granting a dimensional variance, we did not have the opportunity to opine on the issue now before us. *See generally id.*

Now confronted with that issue, we are of the opinion that the board and the trial justice applied the correct standard in reviewing Zoey's application. Although we review questions of law *de novo*, we agree with the trial justice's assessment that "a fair reading of *New Castle* leads to the conclusion that a petitioner must consider 'reasonable alternatives' to satisfy the * * * 'least relief necessary' requirement for a dimensional variance." *See New Castle*, 248 A.3d at 648. As indicated by the trial justice, this Court in *New Castle* "relied upon the 'no reasonable alternative' language to uphold the trial court's determination that an applicant's 'unwillingness to consider suggestions'—i.e. alternatives—solely because the alternative proposal would be less valuable meant that the record supported the zoning board's determination that the applicant had 'failed to establish that the requested relief was the least relief necessary.'" (Brackets omitted.) Indeed, "[a]lthough [we] stated the * * * definitional language in full, [our] discussion of a 'reasonable alternative' did not otherwise rely on the second half of the definitional clause pertaining to whether

- 13 -

the applicant could enjoy a 'legally permitted beneficial use of the subject property.'"

We included the definitional provision of § 45-24-31(66)(ii), as amended by P.L. 2019, ch. 267, § 1, because it informed our analysis of whether the plaintiff therein had demonstrated that the relief it requested was the least relief necessary. However, we made no attempt to resolve any dissonance between the definition section and the variance section. Nor shall we now. In 2023, the General Assembly amended both statutory provisions, removing the "no other reasonable alternative way to enjoy a legally permitted beneficial use" language from the definition section. *See* § 45-24-31(68)(ii). The amendments, which took effect on January 1, 2024, also clarify that the more-than-a-mere-inconvenience standard means that the "relief sought is minimal to a reasonable enjoyment of the permitted use to which the property is proposed to be devoted." Section 45-24-41(e)(2).

Accordingly, the trial justice correctly determined that the board in the case at bar applied the correct hardship standard—more than a mere inconvenience—in finding that Zoey would not be able to enjoy a reasonable use of its property without approval of the dimensional variance.

Because we perceive no error in the trial justice's reasoning, we hold that the trial justice correctly upheld the board's decision.[4]

## IV

## Conclusion

For the reasons set forth herein, we affirm the judgment of the Superior Court. The record shall be returned to the Superior Court with our decision endorsed thereon.

Justice Robinson did not participate.

---

[4] Because the sole issue before us is whether the zoning board and the trial justice applied the proper standard, we need not go further in our review. *See, e.g.*, *Boucher v. McGovern*, 639 A.2d 1369, 1373 (R.I. 1994) ("The scope of our review on a writ of certiorari is restricted to an examination of the record that extends only to questions of law raised in the petition.").

**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**

Licht Judicial Complex
250 Benefit Street
Providence, RI  02903



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Watch Hill Fire District v. Westerly Zoning Board of Review et al. |
| **Case Number** | No. 2022-327-M.P. <br> (WC 21-195) |
| **Date Opinion Filed** | July 18, 2025 |
| **Justices** | Suttell, C.J., Goldberg, Lynch Prata, and Long, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Washington County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Sarah Taft-Carter |
| **Attorney(s) on Appeal** | For Petitioner: <br><br> Gerald J. Petros, Esq. |
| | For Respondents: <br><br> Scott D. Levesque, Esq. <br> Lauren E. Jones, Esq. |