DECISION
Fox Point Citizens Association and Pearlee Freiberg (collectively "Appellants") appeal from a decision of the Zoning Board of Review of the City of Providence ("Board") issued on March 29, 2004. In its decision, the Board granted both a use variance and a dimensional variance to Appellees Stephen Puleo, Jr. and Michelle Boutin (collectively "Applicants") to construct a parking lot on their property, without having to maintain the requisite landscaping. This Court has jurisdiction pursuant to G.L. 1956 § 45-24-69. For the reasons set forth below, this Court vacates the Board's decision and remands the matter to the Board for further findings of fact.
 Facts and Travel
Applicants are the owners of real property located at 54-56 Gano Street, Providence, Rhode Island, also known as Lot 555 on Tax Assessor's Plat 17 ("Property"). The Property, presently a vacant lot, is situated adjacent to an on-ramp for Interstate 195 and is zoned R-2. The Providence Zoning Ordinance ("Ordinance") describes an R-2 district as a two-family district that "is intended for low density residential areas comprising of single family and two-family detached structures located on lots with a minimum land area of five thousand (5,000) square feet." (Ordinance § 101.1.) The Ordinance does not allow parking lots to be constructed in R-2 zones, and a parking lot is not a specially permitted use in that district. Id. at § 303 Use Code 64.1.
Applicants propose to remove debris from the vacant lot and construct a parking lot. On November 10, 2003, they filed an application with the Board requesting a use variance to create parking for no more than four cars to use for their building at 68 Gano Street/669 Wickenden Street. The subject parcel, Lot 555, does not directly abut 68 Gano Street/669 Wickenden Street; rather, Lot 555 is separated from Applicants' other property by two other lots along the same side of Gano Street — Lots 259 and 513. (Appellants' Exhibit I; Appellees' Exhibit E; Tr. at 138, 144-45.)
A notice of public hearing was posted on January 27, 2004, scheduling the hearing on the Applicants' petition for February 10, 2004. The notice indicated that the Applicants were not only seeking a use variance for relief from Ordinance § 303 Use Code 64.1, as they requested in their application, but also that the Applicants desired a dimensional variance for relief from Ordinance § 425, which sets forth landscaping and tree coverage requirements for parking lots.
The hearing before the Board was held on February 10, 2004. At the hearing, testimony and written documents both for and against the application were entered into the record. The Applicants testified that they desired a parking lot to provide parking for their nearby residence.[1] (Tr. at 138.) Applicants also stated that the Property had originally contained the required vegetation, but that their neighbor, Doug Thompson, had removed the shrubs and the natural buffer zone. Thompson disputed this contention and insisted that the hedges which he removed were situated on his own land and not on Applicants' property. (Tr. at 154-55.) Initially, Applicants suggested that they have not replaced the vegetation out of concern that Thompson will remove it again. (Tr. at 139.) However, when later asked by the Board if they planned to replace the landscaping, the Applicants testified that they would consult with the Parks Department and replace landscaping where it had been removed. (Tr. at 143.)
Several neighbors, including Appellant Freiberg, objected to the application. Freiberg testified that the Applicants have been illegally using the Property as a parking lot for the past two and one-half years. (Tr. at 144.) She also claimed that the application for a variance contained false information implying that Applicants' residential property abuts the vacant lot when it is separated by two intervening parcels. (Tr. at 144.) Furthermore, Freiberg expressed concern that the lot would be used to park more than four vehicles due to its size and previous use. (Tr. at 145, 148.) Freiberg additionally opined that the Property is not burdened with a hardship because it is possible to situate a residence upon it. (Tr. at 147.) In support of this argument, Friedberg points out that there are several houses in the area that are situated directly adjacent to the highway.Id. She claims that any home built upon the Applicants' property would not be any nearer to the highway than those already existing homes, and therefore, the Applicants cannot contend that the property is not suitable for residential use.Id. Other objectors also testified that the hardship was connected not to the subject parcel, but to Applicants' neighboring property, a noncontiguous residence with inadequate parking. (Tr. at 154.) Objectors expressed concern that a parking lot would result in dangers associated with increased traffic. (Tr. at 157-58.)
At the hearing, the Board noted that its members were personally familiar with the Property and acknowledged that its proximity to the highway on-ramp might render the parcel an undesirable location for a residence. (Tr. at 146-47.) The Board received numerous documents, including a letter from the Providence Department of Planning and Development, which recommended the following: "This lot is directly adjacent to an interstate highway on-ramp. Due to this and its small size, it would be a hardship to have to develop it for housing. The Department therefore DOES NOT OBJECT to the granting of the use variance for a principal-use parking lot. The Department OBJECTS, however, to the granting of the variance for landscaping. In this case, as much landscaping as possible is necessary to mitigate against the unsightliness of the parking lot."
On March 29, 2004, the Board issued Resolution No. 8809, granting Applicants' requested use and dimensional variances.[2] In rendering its decision, the Board articulated the following findings of fact:
 "1. The applicant has clearly shown that the hardship from which relief was sought is due to the unique characteristics of the subject property being located adjacent to the on-ramp to Interstate Route 195 and further, the hardship is not due to a physical or economic disability of the applicant. The Board finds that the property is rendered unusable for residential purposes because of its located [sic].
 2. The applicant has clearly shown that the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain.
 3. The applicant has clearly shown that the granting of the requested relief will not alter the general character of the surrounding area or impair the intent or purpose of the Zoning Ordinance or the Providence Comprehensive Plan.
 4. The applicant has shown that the relief requested is the least relief necessary in order for the hardship to be alleviated.
 5. The Board has considered the written recommendation of the Department of Planning and development prior to making its decision."
The Appellants took a timely appeal, asking this Court to reverse the Board's decision. Notice was adequately provided pursuant to § 45-24-69.1.
 Standard of Review
The Superior Court's review of a zoning board's decision is governed by § 45-24-69(d), which provides:
 "The Court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
"The Superior Court reviews the decisions of a plan commission or board of review under the `traditional judicial review' standard applicable to administrative agency actions." Restivov. Lynch, 707 A.2d 663, 665 (R.I. 1998). When reviewing a zoning board decision, the Superior Court "lacks [the] authority to weigh the evidence, to pass upon the credibility of witnesses, or to substitute [its] findings of fact for those made at the administrative level." Id. at 665-66 (quoting Lett v.Caromile, 510 A.2d 958, 960 (R.I. 1986)). The Court cannot substitute its judgment for that of the zoning board but must uphold a decision that is supported by substantial evidence contained in the record. Hein v. Town of Foster Zoning Bd. ofReview, 632 A.2d 643, 646 (R.I. 1993). "`Substantial evidence . . . means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a scintilla, but less than a preponderance.'" Lischiov. Zoning Bd. of Review of the Town of North Kingstown,818 A.2d 685, 690 n. 5 (R.I. 2003) (quoting Caswell v. George ShermanSand and Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981)).
 Law and Analysis
A. Standing
Before addressing the merits of Appellants' appeal, a threshold issue is whether Appellant Fox Point Citizens Association ("Fox Point") has standing to appeal the Board's decision. Rhode Island General Law § 45-24-69(a) provides that appeals to the Superior Court may be taken from a zoning board decision by "an aggrieved party."[3] An aggrieved party is defined as
 "(i) Any person or persons or entity or entities who can demonstrate that their property will be injured by a decision of any officer or agency responsible for administering the zoning ordinance of a city or town; or
 (ii) Anyone requiring notice pursuant to this chapter." § 45-24-31(4).
Providence Zoning Ordinance § 1000.9 similarly defines an "aggrieved party" as
 "(i) Any person or persons or entity or entities who can demonstrate that their property will be injured by a decision of any officer or agency responsible for administering this zoning ordinance of a city or town; or
 (ii) Anyone requiring notice pursuant to this ordinance."
Appellees assert that Fox Point does not have standing to appeal the decision. They contend that Fox Point is not an aggrieved party because it does not hold any interest in any property which would be affected by the Board's decision, nor does it own property that is within the 200 foot radius of the Property, which would entitle Fox Point to notice. This contention is without merit since the applicable ordinance gives Fox Point standing regardless of whether it has an interest in property within 200 feet of the subject parcel. Providence Zoning Ordinance § 903.5 provides that "Notice of hearings shall be sent by first class mail to the applicant, and to . . . (F) Any neighborhood group that registers the name of the organization, its officers and mailing address with the director." Appellant Fox Point has submitted two letters in which it registered as a nonprofit neighborhood organization and requested notice for Zoning Board of Review hearings for the years 2003-2004 and 2004-2005. (Appellants' Exhibit L.) Therefore, under Providence Zoning Ordinance § 903.5, Fox Point was entitled to notice, and consequently, qualifies as an aggrieved party pursuant to Providence Zoning Ordinance § 1000.9 (ii).
B. Simultaneous Grant of Use and Dimensional Variances
The Appellants initially contend that the Board's decision to grant a dimensional variance should be reversed because the Board acted in excess of its authority by granting both a use and dimensional variance. They argue that the Board is not permitted to issue a dimensional variance in conjunction with a use which is not permitted as a matter of right.
In support of this position, the Appellants cite to Newton v.Zoning Bd. of Review of the City of Warwick, 713 A.2d 239 (R.I. 1998). In Newton, the Supreme Court of Rhode Island held that "a dimensional deviation could not be granted in a situation in which a use was permitted by way of a special exception" and that "a dimensional variance [may] be granted only in connection with the enjoyment of a legally permitted beneficial use, not in conjunction with a use granted by special permit." Id. at 241, 242. Since the Court issued the Newton decision, the General Assembly has amended § 45-24-41(d), and the statute now provides: "The zoning board of review has the power to grant dimensional variances where the use is permitted by special use permit if provided for in the special use permit section of the zoning ordinance." Appellants contend that the Providence Zoning Ordinance does not specifically provide the Board with the authority to grant a dimensional variance in conjunction with a special use permit, and thus, they claim that the prohibition announced in Newton still applies to the Providence Zoning Board.
Furthermore, Appellants ask this Court to take notice of the language found in Providence Zoning Ordinance § 902.3 (B)(2). That section requires the following:
 "The board shall, in addition to the above standards, require that evidence be entered into the record of the proceedings showing that: . . .
 (2) In granting a dimensional variance, that the hardship that will be suffered by the owner of the subject of property if the dimensional variance is not granted shall amount to more than a mere inconvenience, which shall mean that there is no other reasonable alternative to enjoy a legally permitted beneficial use of one's property. . . ." (Emphasis added.)
Because a parking lot is not a permitted or specially permitted use in an R-2 zone, Appellants contend that the Board was without authority to grant a dimensional variance for such a use.
The Court disagrees. Use variances, dimensional variances, and special use permits are readily distinguishable from one another. Rhode Island General Laws § 45-24-31(61), which defines both "use variance" and "dimensional variance," reads as follows:
 "(i) Use Variance. Permission to depart from the use requirements of a zoning ordinance where the applicant for the requested variance has shown by evidence upon the record that the subject land or structure cannot yield any beneficial use if it is to conform to the provisions of the zoning ordinance.
 (ii) Dimensional Variance. Permission to depart from the dimensional requirements of a zoning ordinance, where the applicant for the requested relief has shown, by evidence upon the record, that there is no other reasonable way to enjoy a legally permitted beneficial use of the subject property unless granted the requested relief from the dimensional regulations. However, the fact that a use may be more profitable or that a structure may be more valuable after the relief is granted are not grounds for relief."
A "special use," on the other hand, is defined as "A regulated use which is permitted pursuant to the special-use permit issued by the authorized governmental entity, pursuant to §45-24-42. . . ." Sec. 45-24-31(57). In other words, a use variance, or "true variance," is a "constitutional safety valve to prevent confiscation of one's property." NortheasternCorp. v. Zoning Bd. of Review of the Town of New Shoreham,534 A.2d 603, 605 (R.I. 1987). A dimensional variance, or "deviation," though, is "a form of relief from an ordinance which regulates the manner in which a permitted use may be implemented." V.H.S. Realty, Inc. v. Zoning Bd. ofReview of the Town of East Greenwich, 120 R.I. 785, 792,390 A.2d 378, 382 (1978). A specially permitted use, however, is designed to meet an "entirely different need" and "contemplates a permitted use when under the terms of the ordinance the prescribed conditions therefor [sic] are met."Kraemer v. Zoning Bd. of Review of the City ofWarwick, 98 R.I. 328, 331, 201 A.2d 643, 644 (1964). Stated differently, the use is permitted under the ordinance, but the use is conditional; the criteria set-forth in the zoning ordinance must be established before a special use permit may be issued. See Roland F. Chase, RhodeIsland Zoning Handbook §§ 121, 122 (1993).
The Court's analysis in Newton specifically focused on whether a dimensional variance could be issued in conjunction with a use that was specially permitted. The Appellants' reliance upon Newton, as it applies to the facts here, is thus misplaced. In Newton, the Court clearly held that a dimensional variance could not be granted in connection with a special use permit. However, in this case, the Applicants seek to convert their land to a parking lot, a use that was not allowed by special use permit under Providence Zoning Ordinance § 303 Use Code 64.1. Rather, the Applicants seek a use variance. As special use permits serve a different purpose than and have unique characteristics from use variances, it follows that the holding in Newton is inapplicable.
An applicant is permitted to apply for a dimensional variance in conjunction with applying for a use variance, so long as he or she can demonstrate that there are no other beneficial uses of the property.[4] See Sun Oil Co. v. Zoning Bd. of Reviewof the City of Warwick, 105 R.I. 231, 233-34, 251 A.2d 167,169(1969). In Sun Oil, the Supreme Court of Rhode Island held that the "more than a mere inconvenience" standard "has never been applied as the controlling yardstick where the property owner is seeking both a relaxation of the area restrictions as well as a variance or an exception for a nonpermitted use."105 R.I. at 234, 251 A.2d at 169. See also, Health Havens, Inc.v. Zoning Bd. of Review of the City of East Providence,101 R.I. 258, 221 A.2d 794 (1966). Consequently, an applicant seeking a dimensional variance for a nonpermitted use, such as a use allowed only by a use variance, is required to demonstrate that a denial of the requested relief would cause a loss of all beneficial use of the property. See Jeffries v. Zoning Bd. ofReview of the City of Providence, No. 90-920, 1992 R.I. Super. LEXIS 113, at *10 (Jan. 17, 1992) ("Where applicants seek relief from both area and use restrictions they must satisfy the more stringent standard applicable to obtaining a true variance"); Chase, Rhode Island Zoning Handbook at § 146 ("Thus, if an applicant seeks both a true variance for a use not permitted in that district, and also seeks relief from area or setback requirements, the `more than a mere inconvenience' standard is inapplicable and the applicant must meet the `loss of all beneficial use' hardship standard for his petition.")
When one compares the purpose of a use variance to that of a special use permit, it is clear that the same concerns which prevent a dimensional variance from being granted with a specially permitted use do not arise when the use is authorized by variance. A use allowed by special-use permit is considered a "regulated use," and requires a Zoning Board's quasi administrative "consent." Nancy E. Giorgi, Thomas J. Ligouri Jr. Robin Main, Rhode Island Land Use: Current Issues inSubdivision and Zoning Law 41-42 (2003). As a "regulated use," a specially permitted use has certain conditions, as provided in the zoning ordinance, which must be satisfied before a zoning board may grant a special-use permit. If a zoning board were authorized to issue a dimensional variance for a use classified as specially permitted, the particular requirements for that special use, including specific dimensional conditions, would, for all intensive purposes, be without force, as they could be usurped by the Board through the issuance of a dimensional variance. Accordingly, in order to give effect to the specifically contemplated limitations the zoning ordinance places upon specially permitted uses, a zoning board cannot have the authority to grant a dimensional variance to supersede those restrictions.
In contrast, the issuance of a dimensional variance for land subject to a use variance would not negate the use variance criteria in the same manner that it would nullify the special use requirements. While a dimensional variance ordinarily may be granted simply by a showing of "more than a mere inconvenience," the applicant attempting to obtain a dimensional variance, as well as a use variance, must satisfy the "loss of all beneficial use" standard. Health Havens, 101 R.I. at 263,221 A.2d at 797-98. Thus, the concern that a dimensional variance would trump the contemplated conditions for a specially permitted use, if granted in conjunction with one another, does not exist where a dimensional variance is granted with a use variance as the same criteria will be applied to both. Accordingly, the Newton
prohibition does not apply, and both variances may be awarded together, provided the requisite standard has been satisfied. Therefore, the Board did not, as a matter of law, exceed its authority by issuing a dimensional variance in conjunction with a use variance.
C. Use Variance
The Appellants further argue that the Board's decision to grant a use variance was arbitrary, capricious, and unsupported by substantial evidence in the record. They claim that the Board's decision contains no reference to any evidence which suggests that there were no other beneficial uses of the Applicants' Property that would comply with the Providence Zoning Ordinance. The Court agrees that although the Board appropriately applied the criteria contained in § 45-24-42 (c), it failed to make the requisite finding that the Applicants satisfied § 45-24-41(d)(1), particularly that the Property was not suitable for any beneficial permissible use.
Rhode Island General Laws §§ 45-24-41 (c) and (d) set forth a list of standards that an Applicant must satisfy before a zoning board will grant a use variance:
 "(c) In granting a variance, the zoning board of review requires that evidence to the satisfaction of the following standards is entered into the record of the proceedings:
 (1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant, excepting those physical disabilities addressed in § 45-24-30(16);
 (2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and
 (4) That the relief to be granted is the least relief necessary.
 (d) The zoning board of review shall, in addition to the above standards, require that evidence is entered into the record of the proceedings showing that: (1) in granting a use variance the subject land or structure cannot yield any beneficial use if it is required to conform to the provisions of the zoning ordinance. . . ."[5]
Pursuant to its terms, the statute requires that an applicant for a use variance satisfy both § 45-24-41(c) and (d). Seealso, Sciacca v. Caruso, 769 A.2d 578, 585 (R.I. 2001) ("We take this opportunity . . . to caution zoning boards and their attorneys to make certain that zoning-board decisions on variance applications (whether use or dimensional) address the evidence in the record before the board that either meets or fails to satisfy each of the legal preconditions for granting such relief, as set forth in § 45-24-41(c) and (d)"). Thus, an applicant for a variance must present sufficient evidence that he or she satisfied § 45-24-41(c) and (d), and within its findings of fact, the Board must declare whether or not the applicant has met this burden.
The Supreme Court of Rhode Island has "long held that `a zoning board of review is required to make findings of fact and conclusions of law in support of its decisions in order that such decisions may be susceptible of judicial review.'" von Bernuthv. Zoning Bd. of Review of New Shoreham, 770 A.2d 396, 401 (R.I. 2001) (citing Cranston Print Works Co. v. City of Cranston,684 A.2d 689, 691 (R.I. 1996) (quoting Thorpe v. Zoning Bd. ofReview of North Kingstown, 492 A.2d 1236, 1236-37 (R.I. 1985))). What is required is "the making of findings of fact and the application of legal principles in such manner that a judicial body might review a decision with a reasonable understanding of the manner in which evidentiary conflicts have been resolved and the provisions of the . . . ordinance applied." Thorpe,492 A.2d at 1237 (R.I. 1985).[6] "Findings made by a zoning board `must of course, be factual rather than conclusional, and the application of the legal principles must be something more than a recital of a litany.'" Sciacca, 769 A.2d at 585 (quotingIrish Partnership v. Rommel, 518 A.2d 356, 358 (R.I. 1986)). If the Board fails to state its findings of fact, "the court will not search the record for supporting evidence or decide for itself what is proper in the circumstances." von Bernuth,770 A.2d at 401 (citing Irish Partnership, 518 A.2d at 359).
In its findings, the Board failed to identify any evidence which would show that the subject land cannot yield any beneficial use if it is required to conform to the provisions of the zoning ordinance. See § 45-24-41(d)(1). Admittedly, the Board found that "the property is rendered unusable for residential purposes because of its located [sic]." However, a finding that the property is unsuitable for residential use is not equivalent to a finding that the property is unsuitable for any beneficial use. A zoning board is required to specifically find that all beneficial use of the property would be lost if the zoning ordinance was literally enforced. For example, when a zoning board granted a use variance upon finding "Extension of public service, unnecessary hardship, beneficial and complete use of the land," the Supreme Court of Rhode Island held:
 "It would be speculation on our part to conclude that this language constitutes a finding by the board that a literal enforcement of the provisions of the zoning ordinance would deprive the applicants of all beneficial use of the land. . . . In short, we cannot say from the language of the decision that the board did not misconceive the test of entitlement and grant a variance to these applicants in order to give them a greater beneficial use of their property than they were then enjoying." Bilodeau v. Zoning Bd. of Review of the City of Woonsocket, 101 R.I. 73, 75, 220 A.2d 224, 225-26 (1966) (internal citations omitted).
Likewise here, the Board did not "in its express terms" disclose that the Property would be without all beneficial use, and thus did not make the requisite findings of fact necessary to grant a use variance.
Further, a review of the Providence Zoning Ordinance reveals that various other uses, other than residential housing, are permitted, either as of right or by special exception, in R-2 zones.[7] An applicant has the burden of showing that the property cannot be beneficially used in a manner permitted in the district, and a board's granting of a variance cannot stand if such a finding is not made. See Cole v. Zoning Bd. of Reviewof the City of East Providence, 97 R.I. 220, 222-23,197 A.2d 166, 167-68 (1964) ("Here the record is barren of the requisite negation as to many of the permitted uses and the lack thereof is on this record fatal to the applicant's case.") The Applicants were thus required to demonstrate that the Property would be unsuitable for any use which conformed to the Providence Zoning Ordinance. The Board failed to make this finding, as is necessary for judicial review. von Bernuth, 770 A.2d at 401. Accordingly, the decision to grant a use variance must be vacated and remanded for findings of fact as to whether the Applicants satisfied the conditions of § 45-24-41(d)(1).[8] This Court notes that if there have been any changes in the composition of the Board since the matter was originally heard, it will have to be reconsidered by the current Board before a proper decision may be rendered.Bellevue Shopping Center Associates v. Chase, 556 A.2d 45, 46
(R.I. 1989).
D. Dimensional Variance
Appellants also contend that the Board's decision to grant the dimensional variance was not supported by substantial evidence in the record and that the Board failed to make a finding that Applicants would suffer "more than a mere inconvenience" if forced to comply with Providence Zoning Ordinance § 425's landscaping requirements. The requirements for obtaining a dimensional variance are found in both § 45-24-41(c) and (d); thus, both sections must be satisfied before relief may be granted. Lischio, 818 A.2d at 692 (citing von Bernuth,770 A.2d at 400). Section § 45-24-41(d) provides:
 "The zoning board of review shall, in addition to the above standards, require that evidence is entered into the record of the proceedings showing that: . . . (2) in granting a dimensional variance, that the hardship suffered by the owner of the subject property if the dimensional variance is not granted amounts to more than a mere inconvenience. The fact that a use may be more profitable or that a structure may be more valuable after the relief is granted is not grounds for relief."
However, when an applicant seeks a dimensional variance in conjunction with a use variance, the more than a mere inconvenience standard does not apply. See Chase, Rhode IslandZoning Handbook at § 146. As the Applicants here sought a use variance and a dimensional variance, Applicants were required to show that without the dimensional variance, the Property would be without all beneficial use.
While the Board's findings of fact address the elements enumerated in § 45-24-41(c), nowhere in the Board's decision is there a finding that the Applicants' Property could not be used in any beneficial manner if required to comply with the Ordinance's landscaping requirements. As there is no such finding of fact, this Court will not examine the record to determine whether the Applicants provided sufficient evidence to support their burden. See Kaveny v. Town of Cumberland Zoning Bd. ofReview, 875 A.2d 1, 8 (R.I. 2005) (citing von Bernuth,770 A.2d at 401 (quoting Irish Partnership, 518 A.2d at 359)) ("when the zoning board `fails to state findings of fact, the Court will not search the record for supporting evidence or decide for itself what is proper in the circumstances.'") Therefore, the matter is remanded to the Board so that it may make the appropriate findings of fact as to whether Applicants sustained their burden of proof.[9]
 Conclusion
This Court finds that the Board failed to make the requisite findings as to whether the Applicants satisfied their burden of showing that that all beneficial use of the property would be lost if the zoning ordinance was literally enforced without their requested relief. The Court hereby sustains the appeal and remands this matter to the Board so that it may make further findings of fact consistent with this decision. Counsel shall submit an appropriate order consistent with this opinion.
[1] The Applicants also explained that Puleo has recently been diagnosed with MS and has difficulty getting in and out of his vehicle when parked in the narrow driveway at 669 Wickenden Street. (Tr. at 138.)
[2] Although dated March 29, 2004, Appellants allege in their Complaint that the Resolution was not posted and recorded in the City Hall until April 2, 2004, and therefore their appeal, dated April 21, 2004, was timely filed within the requisite twenty days as provided by § 45-24-69(a). Appellees do not appear to challenge this contention, and therefore, the Court will not further address this issue.
[3] Providence Zoning Ordinance § 904 also allows for appeals from the Board to be taken to the Superior Court by an aggrieved party: "Any person or persons, jointly or severally aggrieved by a decision of the board may appeal said decision to the Superior Court within twenty (20) days after such decision is filed in the office of the board."
[4] This is a more stringent standard than an applicant for a dimensional variance must normally satisfy. When an applicant is seeking a dimensional variance for a permitted use, the applicant must show that without the requested dimensional relief, he or she will suffer more than a mere inconvenience.Viti v. Zoning Bd. of Review of the City of Providence,92 R.I. 59, 166 A.2d 211 (1960); § 45-24-41(d)(2).
[5] This language is nearly identical to that found in Providence Zoning Ordinance § 902.3.
[6] Boards should "make express findings of fact and should pinpoint the specific evidence upon which they base their decisions . . . because the parties and this court are entitled to know the reasons for the board's decision in order to avoid speculation, doubt or unnecessary delay." Hopf v. Bd. of Reviewof the City of Newport, 102 R.I. 275, 288, 230 A.2d 420, 428
(1967).
[7] For example, Providence Zoning Ordinance § 303 declares that the following uses are permitted, or specially permitted, in R-2 zones: Day Care Centers (Use Code 26, 26.1); Non-Profit Library, Museum and Art Gallery (Use Code 31); Non-Profit Community Park, Playground, Community Center (Use Code 35, 35.1); and Wireless Transmitting and Receiving Antennas (Use Code 65.1). This list is not exhaustive of the non-residential uses which are permitted in R-2 zones, but simply demonstrates that the Board's finding that the Property was unsuitable for residential purposes does not mean that the Property was without any beneficial use if required to comply with the zoning ordinance. Additionally, the fact that these alternative uses may be less profitable is of no consideration as § 45-24-41(d) declares: "The fact that a use may be more profitable or that a structure may be more valuable after the relief granted is not grounds for relief."
[8] A matter should be remanded to the board when there is a "genuine defect in the proceedings in the first instance, which was not the fault of the party seeking remand, or upon the fact that there is no record of the proceedings upon which a reviewing court may act." Roger Williams College v. Gallison,572 A.2d 61, 63 (R.I. 1990). Here, the defect is not due to the fault of the parties, as it is the failure of the Board to make adequate findings which precludes this Court's review and warrants remand of the matter.
[9] Even if the Applicants were seeking only a dimensional variance, and thus entitled to the less stringent "more than a mere inconvenience" standard, the Board's decision would still have to be remanded as no such finding of inconvenience appears in the decision. In von Burnuth, where the zoning board had failed to make a finding of fact addressing the requirements of §45-24-41(d)(2), the Supreme Court of Rhode Island found:
 "We cannot determine what evidence that was presented to the zoning board persuaded it that the requirement of § 42-24-41(d)(2) had been met. Indeed, there is no evidence that the zoning board considered or applied the statutory requirement, given that the statute is not acknowledged in the zoning board's decision. Thus, even if the applicants did present sufficient evidence to support a finding that no other reasonable alternative existed whereby a legally permitted beneficial use of the property was possible, the zoning board's decision was conclusional and failed to apply the proper legal principles, thereby making judicial review of the board's work impossible." von Bernuth, 770 A.2d at 402 (citing Irish Partnership, 518 A.2d at 358).