DECISION
The Mount Development Group (hereinafter "MDG" or "Appellant") appeals from a decision of the Town of Johnston Zoning Board of Review (hereinafter "Board") issued on August 23, 2005, and amended on August 30, 2005. The Board denied Appellant's request for a dimensional variance to construct a single-family house, a permitted use, on a substandard lot of record. This Court has jurisdiction pursuant to G.L. 1956 § 45-24-69. For the reasons set forth herein, this Court remands this matter to the Town of Johnston Zoning Board of Review for adequate findings of fact consistent with this opinion.
 FACTS AND TRAVEL
Appellant MDG is the owner of real property located on Steere Drive in Johnston, Rhode Island, listed as Lot 71 on Tax Assessor's Plat 62 (hereinafter "Property").[1] (Tr. at 6.) MDG seeks to build a two-story, two bedroom single-family house on the vacant lot, which measures 6,573 square feet. (Appellant's Application for Variance at 1, 2; Ordinance.) The lot is situated in an R-40 zoning district, which, pursuant to Johnston Zoning Ordinance, Article III, Table III D-1, permits a single-family dwelling. However, Article III, Section F, Table III F-1 requires a minimum lot size of 40,000 square feet for a single-family dwelling in a R-40 zone. Since Appellant's lot is only a fraction of the requisite lot size, MDG must seek a dimensional variance for relief from the "lot width, front yard setbacks, the side setbacks and rear setbacks." (Tr. at 7.) Appellant contends that it meets the lot coverage and height requirements for the R-40 zone. (Tr. at 18.)
MDG purchased the property in October 2004. It was previously denied relief for a dimensional variance to build a three-bedroom, two bathroom house on the property in March 2003. (Id.) The record suggests, and Appellant corroborates that the Board initially denied the application because of concerns regarding the abutter's wells, potential runoff, and the size of the house.[2] (Tr. at 7.) Appellant contends that it seriously considered the Board's concerns and redesigned a proposal which would require only the "least relief necessary." (Id.)
Two years later, MDG reapplied for a dimensional variance, this time proposing a smaller house with only two-bedrooms and one and a half baths and no garbage disposal on the lot. (Tr. at 7.) MDG increased the square footage for the front, side, and rear yard setbacks, thereby decreasing the amount of relief sought. (Tr. at 11.) MDG brought several qualified witnesses to testify before the Board: a civil engineer, a certified planner, and a licensed realtor. (Tr. at 8, 11, 13.)
With an application evidencing a significant change from the original application, Appellant presented the Board with a permit for an Individual Sewage Design System (ISDS) from the Rhode Island Department of Environmental Management (DEM). Appellant moved the system into the front yard from the back yard in order to put more distance between the system and the abutters' wells. (Tr. at 7.) The system uses an Advantex treatment unit, which, Appellant maintains, effectively treats the effluent to reduce the risk of interfering with the purification system of any neighboring wells. (Tr. at 7, 10.) Appellant claimed that it complied with DEM's more stringent regulations for systems in proximity to active wells that are utilized for primary drinking water supply — out of precaution — although the neighboring lots receive drinking water from the municipal water system. (Id.) To further minimize impact, Appellant supplied the Board with evidence that it placed a two-bedroom deed restriction on the lot, which is reflected in the approved ISDS system design and recorded in the Land Evidence Records. (Id.)
During the Hearing, members of the Board raised concerns regarding the proximity of the neighboring wells. (Tr. at 9.) Appellant stated that all wells within 200 feet of the lot were observed and there were two lots taken into consideration. (Id.) The approved design places the system 90 feet from Lot 60 and 92 feet from Lot 70. (Id.) The original design, Appellant maintains, placed the septic system in the back yard, in closer proximity to the well on Lot 60, which raised concerns by the Board. (Id.) Therefore, Appellant moved the system into the front yard, placed it in equal proximity to each of the abutting wells, and upgraded the system design to rigorously treat the effluent in accordance with a DEM requirement for wells used for the primary drinking supply. (Id.)
Mr. Scott Moorehead, the civil engineer, registered land surveyor, and designer of the proposed septic system testified before the Board concerning its high treatment standards and safeguards to prevent pollution or contamination. (Tr. at 8.) Mr. Moorehead deemed the effluent treatment unit "state-of-the-art" technology. (Tr. at 10.) Mr. Moorehead explained the upkeep requirements from DEM: routine system maintenance by a qualified and registered maintenance contractor in accordance with the operation and maintenance agreement. (Id.) Mr. Moorehead also testified that he is responsible for supervising the system to ensure that it is constructed properly before DEM issues a conformance. (Id.) Mr. Moorehead further ensured the Board that the septic system — and other safeguards, such as a pervious, stone driveway and dry wells in the roof — will not create run-off onto the street or adjacent properties. (Id.) MDG further agreed to "tie all our down spouts into dry wells and agree[d] to a crushed stone driveway, which will reduce any runoff." (Id.) In fact, Appellant offered to agree to post bond in case run-off became a problem after MDG sold the property. (Tr. at 18.) In sum, Mr. Moorehead argued that Appellant received approval from DEM because it proved by clear and convincing evidence that it satisfied all of DEM's stringent requirements under 21.02, to ensure that the septic system (in Mr. Moorehead's words) "would not be a public health hazard." (Tr. at 10, 15.)
Mr. Edward Pimental, a certified planner, testified before the Board regarding the Comprehensive Plan for the neighborhood. (Tr. at 11.) Mr. Pimental relayed to the Board his critical observations of the neighborhood. (Id.) He stated that the developed lots in the neighborhood consisted solely of single family houses. (Id.) He found the largest lot within a two to three block radius to measure only 13,000 to 14,000 square feet — although the entire area is zoned R-40 — requiring at least 40,000 square foot parcels of land to build a single family dwelling. (Id.) Eighty percent of the lots were developed and the average developed lot measured only 9,612 square feet. (Id.) However, Mr. Pimental did note that 73% of the houses in the neighborhood are one-story in height, whereas, Appellant proposes a two-story house to minimize its building print on the lot. (Id.) The average building print is over a thousand feet, however, this proposal encompasses only 884 feet. (Id.)
Before the Board, Mr. Pimental outlined the requested variance relief from the setback requirements. (Tr. at 11.) The minimum front yard setback is 40 feet, and Appellant has requested a 3-foot variance to allow for a 37 foot setback. (Id.) The side yard setback is 35 feet, and Appellant has requested a variance to allow for only 15.2 feet on each side. (Id.) Appellant also requests relief from the minimum rear yard setback, which requires 75 feet, to allow for only a 30.7 foot setback. (Id.) In concluding his testimony, Mr. Pimental argued that this proposal envisioned the least relief necessary; whereas, action by the Board to deny the variance for the two-bedroom single family house could potentially extinguish all beneficial use of the land. (Id.)
Mr. Robert Degregorio, a licensed realtor, testified before the Board concerning the finding of his report on the neighborhood, the lot in question, and the proposal. (Tr. at 13.) Mr. Degregorio testified that there are lots in close proximity to Appellant's property, which contain single family dwellings but measure less than 7,500 square feet. (Id.) Therefore, Mr. Degregorio maintains, that most of the neighborhood lots are nonconforming by dimension. (Id.) Moreover, Mr. Degregeorio testified that a smaller house may create internal problems with heating elements and small rooms. (Tr. at 14.) A house of the proposed size, he maintains, would not detract from the value of the surrounding homes. (Id.)
At the close of Appellant's arguments, counsel for the neighbors who own abutting lots 62 and 60 testified before the Board. (Tr. at 14.) On preliminary matters, counsel argued that notice was insufficient because the new plans were not sent along with the notice and several of the abutting lot owners never received notice. (Id.) The Board did not express concern that Appellant failed to provide adequate notice and continued with the hearing. (Id.)
Upon seeing the new plans for the first time, the neighbors raised concerns about the change in placement of the septic system to the front yard of Appellant's property. (Id.) Specifically, the neighbors also voiced concern about run-off and the potential risk that the septic system may pollute their well. (Tr. at 18.) Board Member Pilozzi explained to the neighbors that they could call the town's building official if the project went through and a run-off problem began. (Tr. at 17.) Mr. Pilozzi dismissed the issue, stating, "[a]s far as runoff, there's no problem with that. That's not a concern at this time." (Id.) With regard to the placement of the septic system in proximity to their well, however, the neighbors voiced greater concern. (Id.) The Board shared this concern, and Board Member Pilozzi stated, "[y]ou're ten feet short. You're within a well that's been — that people use. This was one of the problems two years ago. You're close. I mean, you know, we don't make the rules. It's a hundred feet." (Tr. at 16.)
Mr. Moorehead explained that DEM regulations require that septic systems are placed at least 100 feet away from abutting wells; however, the Department grants variances on a case-by-case basis. (Tr. at 15.) Furthermore, Appellant emphasized that the two abutting wells do not supply the neighbors with primary drinking water. (Id.) In sum, Appellant argued that DEM has jurisdiction over wells and septic systems and not the Board. (Tr.at 14-15.)
At the close of the hearing, the Board voted 5-0 to deny Appellant's request for a dimensional variance to build a two-story, two bedroom house on a substandard lot of record. (Tr. at 11.) While casting their votes, the members briefly mentioned the basis for their decision. Mr. Cianci stated that he voted to deny based on
 [a]rticle III, Section O, paragraph B. the hardship is not a result of any prior action of the applicant and does not a result primarily from the desire of the applicant to realize greater financial gain. I think in this case, it is for financial gain. They knew when they bought the lot that it was in R-40. And, also, under the new ordiance [sic] the 2002-21, under no public sewers, in areas in which public sewers [sic] not available, such lot or parcel of land, paragraph B, an area zoned R-40 Zone should have at least 20,000 square feet. We have to grant a bigger variance on that.
(Tr. at 19.) Mr. Frezza denied Appellant's request for a variance based on the finding of facts stated by Mr. Cianci. (Id.) Mr. Anzelone cast the third vote to deny based on "[s]ection O, and the health and welfare and under Section O on E. — B. and C." (Id.) Mr. Maselli denied the variance for the same reasons set forth by Mr. Anzelone and Mr. Cianci. The Chair, Mr. Pilozzi cast the final vote to deny "because of the ten-foot shortage, it's too close to the existing well; I think it would be inimicable [sic] to the health and welfare of the residents." (Id.)
The Board rendered a written decision on August 23, 2005. (Board's Decision 1.) In its decision, the Board articulated the following findings of fact:
 1. The subject property in [sic] known as Assessor's Plat 62, Lot 71 and contains approximately 6,753 sq. ft.
 2. The petitioner is the owner of the property.
 3. The petitioner is proposing to construct a single family home on the premises.
 4. A variance is required for the proposed use.
 5. The area surrounding the subject property contains residential use parcels.
 6. The premises in question are located in an R-40 zone.
Based on these facts, the Board made the following conclusion of law:
 1. The hardship is the result of action of the applicant and results primarily from the desire of the applicant to realize greater financial gain[.] (Board's Decision, August 23, 2005.)
Whereafter, on August 30, 2005, the Board issued a subsequent letter to Appellant amending its decision. The Board changed a presumably typographic error in the first decision, stating that "the Board grants the petitioner's application for a variance" to state instead that "the Board denies the petitioner's application for a variance." (See Board's Decision 1 and 2.) In addition, the Board added paragraph 2:
 2. The requested relief will alter the general character of the surrounding area and will impair the interest and purpose of the ordinance and comprehensive plan.
(Board's Decision, August 30, 2005.) The facts, however, remained unchanged. The Appellant took a timely appeal, asking this Court to reverse the decision of the Board. Notice was adequately provided pursuant to § 45-24-69.1.
 STANDARD OF REVIEW
The Superior Court's review of a zoning board decision is governed by § 45-24 69(d). Section § 45-24-69(d) provides:
 "The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory, ordinance or planning board regulations provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
It is axiomatic that "[t]he Superior Court reviews the decisions of a plan commission or board of review under the 'traditional judicial review' standard applicable to administrative agency actions."Restivo v. Lynch, 707 A.2d 663, 665 (R.I. 1998). When reviewing a zoning board decision, the Superior Court "lacks [the] authority to weigh the evidence, to pass upon the credibility of witnesses, or to substitute [its] findings of fact for those made at the administrative level."Id. at 665-66 (quoting Lett v. Caromile, 510 A.2d 958, 960 (R.I. 1986)). The trial justice "must examine the entire record to determine whether 'substantial' evidence exists to support the board's findings."DeStefano v. Zoning Bd. of Review of Warwick, 122 R.I. 241, 245,405 A.2d 1167, 1170 (1979). The term "substantial evidence" has been defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance." Lischio v. Zoning Bd. ofReview of North Kingstown, 818 A.2d 685, 690 n. 5 (R.I. 2003) (quotingCaswell v. George Sherman Sand Gravel Co., Inc., 424 A.2d 646, 647
(R.I. 1981)).
The deference this Court gives to the zoning board's decision and findings is, however, conditional upon the board's providing adequate findings of fact that support its decision. Kaveny v. Town of CumberlandZoning Bd. of Review, 875 A.2d 1, 8 (R.I. 2005). Factual findings, amounting to more than mere conclusory statements or a "recital of a litany," are necessary to accomplish judicial review of a zoning board decision. von Bernuth v. Zoning Bd. of Review of New Shoreham,770 A.2d 396, 401 (R.I. 2001) (quoting Irish P'ship v. Rommel, 518 A.2d 356, 358
(R.I. 1986)). The deference given to a zoning decision is due, in part, to the fact "that a zoning board of review is presumed to have knowledge concerning those matters which are related to an effective administration of the zoning ordinance." Monforte v. Zoning Bd. ofReview of East Providence, 93 R.I. 447, 449, 176 A.2d 726, 728 (1962). With respect to questions of law, however, this Court conducts a denovo review; consequently, the Court may remand the case for further proceedings or potentially vacate the decision of the Board if it is "clearly erroneous in view of the reliable, probative and substantial evidence of the whole record." von Bernuth, 770 A.2d at 399; seealso G.L. 1956 § 45-29-69(d)(5).
 FINDINGS OF FACT
In order to render a decision, the Board is required by statute to make findings of fact. Section 45-24-41 mandates in pertinent part:
 "(c) In granting a variance, the zoning board of review requires that evidence to the satisfaction of the following standards is entered into the record . . .
 . . . .
 (d) The zoning board of review shall, in addition to the above standards, require that evidence is entered into the record of the proceedings. . . ." (Emphasis added.)
Furthermore, G.L. 1956 § 45-24-61 requires that "[t]he zoning board of review shall include in its decision all findings of facts and conditions. . . ."
This Court "shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact." G.L. 1956 § 45-24-69. However, this deferential standard of review is contingent upon the Board making sufficient findings of fact.Kaveny, 875 A.2d at 8; von Bernuth, 770 A.2d at 401 (holding findings of fact necessary so that Board decisions "may be susceptible of judicial review"). When the record is devoid of findings of fact, or findings of fact are judged to be inadequate, judicial review becomes impossible.Kaveny, 875 A.2d at 8. In such a situation, this Court "will not search the record for supporting evidence or decide for itself what is proper in the circumstances." von Bernuth, 770 A.2d at 401 (quoting IrishP'ship, 518 A.2d at 359). Particularly with variance applications, zoning boards and their attorneys should "make certain that [decisions] . . . address the evidence in the record before the board that either meets or fails to satisfy each of the legal preconditions for granting such relief, as set forth in § 45-24-41(c) and (d)." Sciacca v.Caruso, 769 A.2d 578, 585 (R.I. 2001).
In rendering its decision, the Board concluded that "[t]he hardship is the result of action of the applicant and results primarily from the desire of the applicant to realize greater financial gain[.]" The Board's findings do not lend any support for this conclusion. For example, Mr. Cianci stated while casting his vote that he believed MDG created the hardship and sought primarily financial gain: "[t]hey knew when they bought the lot that it was in R-40." (Tr. at 19.) With regard to this issue, case law is well-settled that an applicant may not be denied relief for a variance due solely to the fact that the applicant knew the lot was nonconforming by dimension when it was purchased.See DeStefano v. Zoning Board of Review of Warwick, 122 R.I. 241, 248,405 A.2d 1167, 1171 (1979); Denton v. Zoning Board of Review ofWarwick, 86 R.I. 219, 223, 133 A.2d 718, 720 (1957). Without adequate finding of facts, however, this Court is unable to determine whether this was the sole basis for the Board's decision that the hardship was self-created.
The Board's decision reveals almost nothing about how the Board arrived at its conclusion that the requested relief would alter the character of the surrounding area and impair the interest and purpose of the ordinance and comprehensive plan. The Board stated in its findings, "[t]he petitioner is proposing to construct a single family home on the premises. . . . The area surrounding the subject property contains residential use parcels." (Board's Decision, I.) The Board's meager finding of facts fails to indicate how Appellant's proposal "would alter the character of the surrounding area." (Id.) Without sufficient findings of fact, this Court is unable to find substantial evidence to support the Board's conclusion that the proposal would alter the general character of the land and impair the interest and purpose of the ordinance and comprehensive plan.
In essence, the Board's decision in this matter is a recital of the standard of review as it appears both in the Town of Johnston ordinances and the Rhode Island General Laws, and such recital does not amount to sufficient findings of fact. Irish P'ship, 518 A.2d at 358-59 (quotingMay-Day Realty Corp., 107 R.I. at 267, 267 A.2d at 403). Here, the Board inserted conclusory boilerplate language, unsupported by any factual findings. See Irish P'ship, 518 A.2d at 358-59; Hopf v. Board ofReview, 102 R.I. 275, 288, 230 A.2d 420, 428 (1967).
Accordingly, this Court must reverse and remand the case for further proceedings consistent with this opinion. On remand, the Board is directed — on the basis of the record before it and in accordance with the applicable standards of law — to make factual findings that either persuade the Board to grant the relief requested or deny it as the Board sees fit. On remand, the Board should ensure that its findings of fact are sufficiently delineated within its opinion, making reference to evidence presented, and that its conclusions of law are then adequately supported by said findings. This Court directs the Board to make specific findings of fact concerning what particular characteristics of MDG's application led the Board to its decision in accordance with the statutory requirements governing the grant or denial of such variance.
 CONCLUSION
After review of the record before it, this Court finds that the Board's findings of fact and decision were inadequate, amounting to unsupported conclusions. Accordingly, this Court hereby remands this matter to the Town of Johnston Zoning Board of Review for adequate findings of fact consistent with this opinion. Counsel shall present an appropriate Order consistent with this Decision.
[1] Counsel for Appellant stated that lot is also listed as "Record Lot 75 on the Reservoir Plat, Johnston, Rhode Island, by Waterman Engineering, August 1945." (Tr. at 7.)
[2] Without the 2003 Decision before this Court, the record indicates that Appellant's initial application was denied due to the reasons stated above. Overall, the Board ruled that the Appellant did not seek the least relief necessary. (Tr. at 7.)