DECISION
Before the Court is an appeal filed by Plaintiffs Garfield Avenue Development LLC ("Garfield, LLC") and the Stop Shop Supermarket Company, LLC ("Stop Shop") (collectively, "Plaintiffs"). They appeal from a Decision of the Cranston Zoning Board of Review ("Zoning Board") denying an application for a special use permit and dimensional relief with respect to property located at 110 Garfield Avenue, Cranston, and otherwise known as Assessor's Plat 7, Lots 2561, 2562, 2593-2597 and 3768. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 I Facts and Travel
Garfield, LLC, a Rhode Island limited liability company, owns the property that is the subject of this appeal. It plans to consolidate vacant, undeveloped lots to form a single 33,083 square foot lot. The property is located within an M-2 zoning district with frontage on Garfield Avenue and West Harry Street. (Hearing Transcript, dated May 13, 2009 at 45 and 63). It also is *Page 2 
adjacent to Route 10 between two ramps. (Id. at 63). Garfield Avenue is a four lane road. Id. According to the Zoning Ordinance for the City of Cranston (the Ordinance), M-2 districts are designated for industrial uses and require a minimum lot size of 60,000 square feet.
Stop Shop seeks to construct a gasoline fueling station on the property. Gasoline fueling stations are permitted as an approved use in an M-2 district only by way of a special use permit from the Zoning Board. Gasoline service stations are subject to the provisions contained in 17.48.010 of the Ordinance. In April 2009, Stop Shop filed an application with the Zoning Board seeking a special use permit pursuant to Section 17.92.020 of the Ordinance, as well as dimensional relief from the requirements of Sections 17.48.010 (gasoline service station) and 17.72.010 (signs). Section 17.92.010 of the Ordinance governs the granting of variances.
In its application, Stop Shop recognized that the lot "is undersized for an M-2 industrial zone parcel and is directly adjacent to Route 10." (Application, dated April 1, 2009, at 2). The application further stated:
 "The fueling facility will include five (5) double-sided fueling dispensers, a kiosk with employee restroom and overhead canopy. The site plan has provided for space for an ATM bank machine as well as for an area for vending machines. In addition to the dimensional variance for the pre-existing undersized lot, applicant seeks relief from the requirement that a driveway be a minimum of 20' from a property line. . . . Applicant also seeks a dimensional variance for signage for this location. An existing billboard that has stood as a legal nonconforming use for decades will remain. It contains 1,472 sq. ft. Billboards in an M-2 zone are allowed 500 sq. ft. The remaining proposed signage for the fueling facility totals 122.8 sq. ft. The gasoline pricing sign will utilize LED type lettering. The proposed signage for the fueling facility is necessary to assist customers and to identify gas prices." Id. *Page 3 
Stop Shop also submitted its proposition to the Planning Commission for the City of Cranston ("Planning Commission").[1]
The Site Plan Review Committee of the Cranston Planning Commission conducted a preliminary site plan review of the proposal on March 5, 2009. At that hearing, the Acting Deputy Fire Chief and the City's Traffic Engineer raised several traffic concerns that needed to be addressed. Those concerns involved traffic speed, viability of spot traffic speed count, traffic capacity from Route 10 to Garfield Avenue, and the frequency of vehicle accidents in the immediate vicinity. On March 19, 2009, the Site Plan Review Committee recommended approval of the preliminary proposal, provided, among other things, that the applicant address the issue of accident prevention; work with the police department to determine if spot traffic speed counts are viable; work with the Rhode Island Department of Transportation regarding proposed detours or traffic rerouting that may affect the proposal; and document all coordination efforts with certain water supply boards concerning project approvals.
On May 5, 2009, the Planning Commission issued its written report. After making its findings of fact, the Planning Commission unanimously "recommend[ed] approval with the condition that the applicant enters into the Zoning Board of Review's record of proceedings, sufficient evidence satisfying the remaining standards for the granting of variances relating to *Page 4 
hardship, least relief necessary, mere inconvenience and reasonable use, as set forth in R.I.G.L. 45-24-41." (Emphasis in the original.)
Thereafter, on May 13, 2009, the Zoning Board conducted a duly noticed public hearing on the application. Testifying on behalf of the applicant were five witnesses. Those experts consisted of Certified Land Planner Lisa Davis; Registered Professional Engineer Expert Robert Bragger; Registered Professional Engineer and Chemical Engineering and Environmental Sciences Expert William Taber; Transportation Engineer and Traffic Expert Robert Clinton; and Licensed Real Estate Broker and Real Estate Expert Peter Scotti. After the hearing, a written decision duly was recorded in the land evidence records on June 8, 2009, in which the Board denied the application. The Plaintiffs timely appealed the decision to this Court.
 II Standard of Review
This Superior Court's review of a zoning board decision is governed by § 45-24-69(d), which provides in relevant part:
 "The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the Appellant[s] have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or *Page 5 
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
Our Supreme Court requires this Court to "review[] the decisions of a . . . board of review under the `traditional judicial review' standard applicable to administrative agency actions."Restivo v. Lynch, 707 A.2d 663, 665 (R.I. 1998). Accordingly, the Court "lacks [the] authority to weigh the evidence, to pass upon the credibility of witnesses, or to substitute [its] findings of fact for those made at the administrative level."Id. at 665-66 (quoting Lett v. Caromile,510 A.2d 958, 960 (R.I. 1986)). In performing this review, the Court "may `not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact.'"Curran v. Church Community Housing Corp.,672 A.2d 453, 454 (R.I. 1996) (quoting § 45-24-69(d)).
Furthermore, the Court "must examine the entire record to determine whether `substantial' evidence exists to support the board's findings." Salve Regina College v. Zoning Bd. Of Reviewof City of Newport, 594 A.2d 878, 880 (R.I. 1991) (quotingDeStefano v. Zoning Bd. Of Review of Warwick,122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979)). "Substantial evidence" is defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance."Lischio v. Zoning Bd. Of Review of North Kingston,818 A.2d 685, 690 n. 5 (R.I. 2003) (quoting Caswell v. GeorgeSherman Sand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981)).
 III Analysis
The Plaintiffs assert that they met all of the requirements necessary for the granting of a special use permit and for dimensional relief under both Rhode Island Law and under the *Page 6 
Ordinance. Specifically, they contend that they presented reliable and uncontested expert testimony demonstrating that they met all of the necessary requirements. They further maintain that the Board ignored that uncontested expert evidence and, instead, improperly relied upon lay witness testimony that had no probative value.
In response, the Board avers that there was substantial evidence in the record to support its conclusion that the applicant failed to meet the criteria for the issuance of a special use permit. Specifically, the Board asserts that there was competent evidence in the record concerning adverse traffic conditions at or near the property to support its conclusion that the proposed facility would be injurious and obnoxious to the neighborhood and would not be in conformance with the purpose and intent of the Comprehensive Plan's Future Land Use Map.
In the present case, the property is located in an M-2 zone. Gasoline service stations are permitted in such zones only by way of a special use permit. Furthermore, while gasoline service stations require a minimum lot area of twelve thousand square feet, if the property is located in a zone with dimensional requirements that are more restrictive, those requirements prevail. It is from those requirements (60,000 square feet) that Plaintiffs seek dimensional relief.
The Rhode Island Supreme Court distinguishes the three recognized categories of relief that a zoning board may award; namely, a "true" variance (also known as a use variance), [2] a deviation (also known as a dimensional variance), [3] and an exception.[4] With respect to said categories,
 "A `true' variance is relief to use land for a use not permitted under the applicable zoning ordinance. A deviation is relief from restrictions governing a permitted use such as lot-line setbacks, limitations on height, on-site parking, and minimum frontage *Page 7 
requirements. An exception is relief expressly allowed by the applicable zoning ordinance that is similar in nature to a deviation in that it generally pertains to area and setback requirements of a permitted use." Bamber v. Zoning Bd. of Review of Foster, 591 A.2d 1220, 1223 (R.I. 1991) (internal citations omitted).
Each category of relief requires a different burden of proof.See id.
In the City of Cranston, special use permits are governed by section 17.92.020 of the Ordinance. It provides in pertinent part:
 "2. Special Permits Power. The zoning board of review shall have the power in appropriate cases and subject to appropriate conditions and safeguards to issue special permits as authorized by this chapter in harmony with its general purpose and intent. In issuing such permits, the board shall determine that the use meets the following requirements:
 a. It shall be compatible with its surroundings;
 b. It shall not be injurious, obnoxious or offensive to the neighborhood;
 c. It shall not hinder the future development of the city;
 d. It shall promote the general welfare of the city; and
 e. It shall be in conformance with the purposes and intent of the comprehensive plan." Section 17-92-020.
In order to obtain a deviation or dimensional variance, an applicant must satisfy the requirements set forth in Section 17.92.010 of the Ordinance. It provides in pertinent part:
 "B. In granting a variance, the zoning board of review shall require that evidence to the satisfaction of the following standards be entered into the record of the proceedings:
 1. That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant;
 2. That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 3. That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance codified in this title or the comprehensive plan upon which the ordinance is based; and *Page 8 
 4. That the relief to be granted is the least relief necessary.
 C. The zoning board of review shall, in addition to the above standards, require that evidence be entered into the record of the proceedings showing that:
 . . .
 2. In granting a dimensional variance, that the hardship that will be suffered by the owner of the subject property if the dimensional variance is not granted shall amount to more than a mere inconvenience, which shall mean that there is no other reasonable alternative to enjoy a legally permitted beneficial use of one's property. The fact that a use may be more valuable after the relief is granted shall not be grounds for relief." Section 17.92.010.
Although this Court reviews a zoning board's decision with deference, such "deferential standard of review, however, is contingent upon sufficient findings of fact by the zoning board."Kaveny v. Town of Cumberland Zoning Bd. of Review,875 A.2d 1, 8 (R.I. 2005). The reason for this is because "a municipal board, when acting in a quasi-judicial capacity, must set forth in its decision findings of fact and reasons for the actions taken." Id. (quoting Sciacca v. Caruso,769 A.2d 578, 585 (R.I. 2001)). In addition, "[s]uch findings are necessary so that zoning board decisions `may be susceptible of judicial review.'" Id. (quoting von Bernuth v. Zoning Boardof Review of New Shoreham, 770 A.2d 396, 401 (R.I. 2001)). Furthermore, "[t]hose findings must, of course, be factual rather than conclusional, and the application of the legal principles must be something more than the recital of a litany." Id. In situations where "a zoning board `fails to state findings of fact, the [C]ourt will not search the record for supporting evidence or decide for itself what is proper in the circumstances.'"Id. (quoting Irish Partnership v. Rommel,518 A.2d 356, 359 (R.I. 1986)).
However, a zoning board's decision not only must state its findings and conclusions, but also elucidate its reasons for reaching those findings and conclusions. See IrishPartnership, 518 A.2d at 358. That is because *Page 9 
 "[R]easons are so powerful that the requirement has been imposed with remarkable uniformity by virtually all federal and state courts, irrespective of a statutory requirement. The reasons have to do with facilitating judicial review, avoiding judicial usurpation of administrative functions, assuring more careful administrative consideration, helping parties plan their cases for rehearings and judicial review, and keeping agencies within their jurisdiction." Id. (quoting Hooper v. Goldstein, 104 R.I. 32, 44; 241 A.2d 809, 815 (1968) (internal quotations omitted)).
Consequently, it is essential to the judicial task that zoning boards support each conclusion of law with appropriate findings of fact because conclusional rather than explanatory decisions do not aid the Court in its review. See von Beruth, 770 A.2d at 402.
In its decision in this matter, the Board made the following pertinent findings of fact:
 "1. The property's proposed commercial use is inconsistent with the Comprehensive Plan's Future Land Use Map, which calls for Industrial uses in this area of the City.
 2. Though zoned for industrial use, the existing lot size is ½ the required area needed to construct an industrial building in an M-2 zone (60,000 sq. ft.).
 3. The triangular shape of the lot makes it difficult to accommodate the placement of an industrial building on the lot with sufficient parking and site circulation.
 4. The structures on the site (pump islands, canopy, kiosk) meet the required yard setbacks.
 5. The proposed freestanding sign . . . conforms to the area and height for freestanding signs in an M-2 zone. . . .
 . . .
 7. Total signage for the site . . . is less than the total signage permitted . . . in an M-2 zone.
 8. There is a pre-existing non-conforming . . . billboard located on the southerly end of the site that will remain. . . ."
In making these findings, the Board observed that it had heard testimony from the applicant, various experts and objectors, including two individuals who "spoke in opposition with concern on additional traffic congestion citing an existing restaurant and business school." (Decision, recorded April 7, 2009, at 2.) The Board then concluded *Page 10 
 "In this case, after giving careful consideration to the evidence presented and the findings of fact which the Board chose to adopt, the Board finds that this application did not meet the criteria for a Special Use Permit and should be denied for the following reasons: Based upon the entire record, the Board finds that the fueling station would be injurious and obnoxious to the neighborhood. Additionally, the Board chose not to accept the recommendation of the Planning Commission and the Board further finds that the facility would not be in conformance with the purpose and intent of the Comprehensive Plan's Future Land Use Map, which calls for Industrial uses in this area of the city." Id.
A zoning board may reject the testimony of an expert if there is substantial contrary evidence. See Restivo v. Lynch,707 A.2d 663, 671 (R.I. 1998) (holding that "there is no talismanic significance to expert testimony. It may be accepted or rejected by the trier of fact[,]" especially if there is persuasive opposing testimony). Nevertheless, where there is no opposing expert testimony or evidence in the record adverse to an applicant, the zoning board must accept that testimony as undisputed, unless the board can demonstrate that it relied upon its own special knowledge.See Salve Regina College, 594 A.2d at 882 andDeStefano, 122 R.I. at 247, 405 A.2d at 1171. If a board reaches a decision allegedly based upon its special knowledge, it "will not be upheld . . . unless the record reveals the underlying facts or circumstances the board derived from its knowledge of the area." Id. "[L]ay testimony regarding traffic data [is] not competent and ha[s] no probative force. Restivo,707 A.2d at 671 (citing Salve Regina College,594 A.2d at 881-82). However, lay persons may give testimony "on actual observed effects" of such events as traffic congestion and speed. Id.
In the instant matter, the Board's finding that "the property's proposed commercial use is inconsistent with the Comprehensive Plan's Future Land Use, which calls for Industrial uses in this area of the City[,]" ignores the fact that gasoline fueling stations are permitted uses in M-2 zones by way of a special use permit. Moreover, while the triangular shape of the lot may *Page 11 
"make[] it difficult to accommodate the placement of an industrial building on the lot with sufficient parking and site circulation[,]" the Board did not find that such a placement would be impossible.
Thus, in denying the application for the special use permit, the Board only mentioned two of the five requirements for granting such permits; namely, that the proposal would be injurious and obnoxious to the neighborhood and would not be in conformance with the purpose and intent of the Comprehensive Plan's Future Land Use Map. Furthermore, the Board did not explicate its reasons for reaching such conclusion or state the evidence upon which it relied in reaching this conclusion. Additionally, having denied the application for the special use permit, the Board did not attempt to address that portion of the application requesting dimensional relief. Conceivably, the Board rejected the application based upon the size of the property and its failure to conform with the dimensional requirements contained in Section 17.48.010 of the Ordinance.
Section 17.48.010 governs gasoline service stations. It provides in pertinent part:
 "A. Generally. Any gasoline service station, filling station, in any district shall conform at least to the following regulations. Where the intensity regulations for any district in which a gasoline service station is located are more restricting than the regulations contained hereinafter, all gasoline service stations or filling stations shall conform to the more restrictive dimensional requirements.
 B. Frontage and Area. Every gasoline service station shall have a minimum frontage of one hundred twenty (120) feet and a minimum area of twelve thousand (12,000) square feet." Section 17.48.010.
It is well established that "when statutes use negative terms, they are usually interpreted as mandatory prohibitions." Quality CourtCondominium Ass'n v. Quality Hill Development Corp.,641 A.2d 746, 751 (R.I. 1994). Accordingly, "[n]egative words in a grant of power should never be construed as directory. . . ."Id. at 752. However, while conceivably the Board *Page 12 
could have rejected the application based upon lot size, it did not do so, and this Court declines to speculate upon whether the Board validly could have made such a conclusion.
After scrutinizing the Board's decision, the Court is unable to determine what facts the Board relied upon to deny the application for a special use permit; consequently, the Court is unable to adjudicate whether the Board's decision was clearly erroneous, arbitrary, capricious, or an abuse of discretion, as Plaintiffs contend. See § 45-24-69(d). Furthermore, coupled with the fact that the Board failed to apply all of the required factors with respect to the application for a special use permit, the Board failed to apply any factors whatsoever with respect for the sought-after variance relief.
This Court is unable to review the Board's decision unless it indicates what evidence the Board relied upon in reaching the conclusion that it did. As noted above, the Court will not search the record for the Zoning Board's reasoning where the Zoning Board fails to state adequate findings and conclusions of law. SeeKaveny,875 A.2d at 8 (quoting von Bernuth, 518 A.2d at 358-59) (other citations omitted). Consequently, the case must be remanded to the Board for adequate finding of fact and conclusions of law.
 IV Conclusion
In view of the lack of adequate findings to support the Board's denial of the special use permit and variance relief, the Court concludes that the Board's decision was fatally flawed due to its having stated some conclusions, but failing to state the evidence upon which these conclusions were based. Consequently, the Board's decision is vacated and the case is remanded for further proceedings consistent with this Decision. Furthermore,
 "[o]n remand, the [B]oard should take care that its findings of fact are clearly set forth in its decision, referring to the evidence *Page 13 
presented, and that its conclusions of law are properly supported by the findings of fact. The board shall confine its review to the existing facts and applicable law at the time of its initial decision. The board shall render its decision as expeditiously as possible and, in no event, beyond ninety days after the entry of this [Decision]." Kaveny, 875 A.2d at 8.
Counsel shall submit an appropriate form of order consistent with this Decision.
[1] Section 17.92.020 of the Ordinance provides in pertinent part:
 "No special permit shall be granted by the zoning board of review until the application or request has been referred to the city planning commission. The planning commission shall have thirty (30) days following such referral in which to express its opinion thereon. If within such period, the commission fails to express its opinion or make a recommendation, the application or request should be deemed to be recommended by the planning commission. The opinion and recommendation should be considered by, but shall not be binding upon, the zoning board of review.
[2] See 3 Edward H. Ziegler, Rathkopf's The Law of Zoningand Planning, § 58.4 (2009).
[3] See Lischio v. Zoning Bd. of Reviewof North Kingstown, 818 A.2d 685, 691 (R.I. 2003).
[4] Also known as a special use permit.